# Clements v. The State.

## Indictment for Murder.

1. *Presumption of malice in cases of homicide.* — It is not error for the court to instruct the jury that " every unexplained homicide is presumptively malicious."

2. *Homicide by officer, when resisted in making arrest.* — If a person, having authority to arrest, and using the proper means for that purpose, be resisted, he may repel force by force, and need not give back; and if the party making resistance be unavoidably killed in the struggle, the homicide is justifiable. But a mere attitude of defiance, or preparation to resist, not amounting to an assault, especially in cases of misdemeanor, will not justify the killing.

3. *Homicide by person having authority to arrest.* — On the trial of a person for the murder of another, for whose arrest he had a warrant at the time of the killing, a charge to the jury, which instructs them that "if they believe, from the evidence, that the prisoner went out with a predetermination to kill the deceased, having the warrant is no excuse, and he is guilty of murder in the first degree," is erroneous : the evil intention must coexist with and prompt the deed.

[Clements v. State.]

FROM the Circuit Court of Colbert.
Tried before the Hon. JAMES S. CLARK.

W. COOPER and J. B. MOORE, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

B. F. SAFFOLD, J. — The appellant was found guilty, and sentenced to ten years' imprisonment in the penitentiary, under an indictment charging him with the murder of Thomas Walker. The evidence, in substance, was, that he was appointed specially by a justice of the peace to execute a search-warrant on the person or in the house of Walker, for the discovery of a coat alleged to have been stolen. Walker resisted the search, with threats of having his dead body to walk over before it should be done; but said he had had such a coat as was described, and had returned it to the person from whom he procured it, because he was not satisfied about it. The appellant returned to the justice, and obtained a warrant for the arrest of Walker, on the ground of resisting him in the execution of the search-warrant. He found him at work on the railroad track, in a cut of some depth, and approached him, not along the railroad, but from the side, by which, on account of some cross-ties or other wood, he could not so readily be seen. When within about twenty feet of Walker, he fired his pistol at him, and killed him. Three witnesses for the State, who were present at the time, two of whom were about thirty feet from Walker, and the other, perhaps, sixty or seventy feet distant, say, their attention was first attracted by the report of the pistol, and, looking up instantly, they saw Walker stagger towards them, and, in a few steps, reel into the ditch and fall, and saw the defendant standing with a pistol in his hand. He requested the witnesses to examine Walker's coat, which was lying a few feet from where he had been at work, to see if there was a pistol in it. But, presently, on their hesitating somewhat, he came down into the cut, and said he would do it himself. Taking up the coat, he exhibited a pistol, and said to the witnesses, "You see his pistol. Now, I've got the law on my side." He went away with Youngblood, who had been with him all the time, carrying the pistol which he had exhibited as Walker's. Walker's coat was lying four or five feet up the bank of the cut, where he had thrown it when beginning to work. When he was shot, and staggered towards the witnesses, he was coming from his coat, or leaving it behind him. They saw no effort of his to get to the coat at any time. They heard no voices, call, summons, or word whatever, before the pistol was fired. Youngblood testified,

that when he and the defendant came within twenty feet of Walker, the defendant commanded him in a distinct voice to surrender, or to consider himself under arrest. Walker replied, "By God, you can't arrest me. I will not be arrested;" and, springing to his coat, was drawing a pistol, when the defendant shot him. The witness heard the click of the pistol as the deceased cocked it, and it was half drawn out when he was shot.

1. The bill of exceptions recites, that amongst other charges, with the general one, the court gave the following: "Every unexplained homicide is presumptively malicious." A homicide is the killing of one human being by another. Blackstone defines it to be the killing of any human creature ( 4 Bl. Com. 177), while Hawkins says, it is the killing of a man by a man. 1 Hawk. Pl. C. *Homicide*. Though suicide may be included in the most extensive sense of the word, the law now takes no consideration of it as such. It is seldom that the death can be shown to be a homicide, without the disclosure of some circumstances tending to stamp its character. But, in the prosecution of persons charged even with murder, if a credible witness testifies that he saw the accused inflict a mortal wound on the deceased, of which he instantly died, and there is no other evidence, the crime is satisfactorily proved. 1 Greenl. Ev. 17. But it by no means follows, that such direct and positive evidence takes away from the defendant the presumption of innocence, in aid of any proof offered by him, or brought out by the prosecution, tending to rebut the case so made out. *Ogletree* v. *State*, 28 Ala. 693. As, in this case, all the circumstances of the killing were explained, and no indication is given that the burden of proof was shifted, we deem the charge of the court a correct instruction as to how malice may be proved.

2. The defendant's counsel having read from Bishop's Criminal Law, vol. ii. § 663 (579), "In misdemeanors and breaches of the peace, as well as in cases of felony, if the officer meet with resistance, and the offender is killed in the struggle, the killing will be justified;" the court instructed the jury, that "a mere attitude of defiance, or preparation to resist, did not constitute the sort of struggle referred to by the author." The law, as quoted from Bishop, is more correctly stated by Russell: "In all cases, whether civil or criminal, where persons having authority to arrest or imprison, and using the proper means for that purpose, are resisted in so doing, they may repel force with force, and need not give back: and if the party making resistance is unavoidably killed in the struggle, this homicide is justifiable." 1 Russ. on Crimes, 665, 666, 667. To constitute an assault with a pistol, it is necessary that the pistol should be *presented* at the person charged to have been

[Ward v. State.]

assaulted, within the distance to which the pistol may do execution. *Tarver* v. *State*, 43 Ala. 354. The drawing of a pistol, without presenting or cocking it, is not an assault. *Lawson* v. *State*, 30 Ala. 14. A struggle with the officer necessarily embraces an assault, at least on the part of the accused. In this case, the evidence tended to prove, at most, that the deceased had cocked a pistol, and half drawn it. This was a preparation to resist, and an attitude of defiance, not amounting to an assault or a struggle. The instruction given was correct, and not calculated to mislead. It cannot be held that a degree of resistance not amounting in itself to a crime, and only unlawful on account of the obligation of the party to surrender, as would be an attempt to escape, will justify an officer in killing one accused of a misdemeanor.

3. The court further charged: " If the jury believe, from the evidence, that the prisoner went out with a predetermination to kill the deceased, having the warrant is no excuse, and he is guilty of murder in the first degree." Bishop says, " If two persons, one of whom has determined to kill the other, meet and come to blows, and the one who had such determination in his mind inflicts an injury from which death follows, he is guilty of murder, or manslaughter, according as the killing was in consequence of the previous malice or of the sudden provocation." 2. Bish. Crim. Law, § 736 (643). The evil intention is nothing, unless it coexists with the deed, and prompts it. The prisoner could not ask to be acquitted, if he went out without a predetermination to kill the deceased. There was error in this charge.

The other assignments of error are more or less included in what has been said.

The judgment is reversed, and the cause remanded.