## THOMAS *v.* KINKEAD.

Decided February 27, 1892.

*Homicide—To prevent escape of misdemeanant.*

A peace officer, having arrested one accused of misdemeanor, cannot kill him. to prevent his escape although no other means of prevention are available.·

APPEAL from *Pulaski* Circuit Court.

JOSEPH W. MARTIN, Judge.

*T. J. Oliphint* for appellants.

1. An officer cannot take life in attempting to arrest or to prevent escape after arrest, in misdemeanor cases, unless the party resists by force, endangering the life of the officer or threatening great bodily harm. The court's instructions on that subject were erroneous. 11 Ky. L., 67; 2 Lea, 720; 1 Lewin, Cr. Cases, 187; 3 S. W. Rep., 622; 44 Texas, 645; 50 Ala., 117'; 1 Hale, P. C., 481; 1 East, P. C., 302; 65 N. C., 327; 44 Tex., 128; 106 N. C., 728; 11 S. W. Rep., 520.

2. As to the law of arrest, see Mansf. Dig., sec. 2005; 50· Mich., 549; 1 Bald., 240; 21 Ala., 240; 8 Me., 127; 22 Mich., 267; 1 Wend., 210.

*Ratcliffe & Fletcher* for appellees.

Thomas being under arrest, whether for misdemeanor or felony, when he attempted to break away, Heard had a right to shoot him to prevent escape if that extreme measure was necessary. 1 Bish., Cr. Pr. (2d ed.), sec. 161; 106 N. C., 728; 3 S. W. Rep., 623; 44 Tex., 128; 34 Minn., 361; 30· Ala., 682, 693–4; 3 Harr., 568–9; 1 Mill, S. C., 385–7; 1 Hill, S. C., 212; 1 East, P. C., 295; 1 Russell on Cr., 665·; 2 Bish., Cr. Law, secs. 662–3; 80 Ky., 1; 78 *id.*, 380.

2. The sureties are not liable for the acts of Heard. 49· Pa. St., 151; 2 Des. (S. C.), 629; 13 Mo., 437; 28 N. J. L., 224; 11 Ired. (N. C.), 141; 51 N. H., 136; 44 Mo., 491; 37 Conn., 365; 32 Ind., 239; 22 La. An., 600: 39 Fed. Rep., 853; 43 N. W. Rep., 297; 8 Otto, 142; Addison on Cont.,·

pp. 65–6 appendix; 9 Mo. App., 63; 84 N. C., 128; 58 Miss., 717; 55 Cal., 304.

MANSFIELD, J.   This action was brought by the widow and minor children of John Thomas, deceased, against Ewing Kinkead, a constable of Pulaski county, and the sureties on his official bond, to recover damages for the alleged wrongful killing of Thomas by Jesse F. Heard, a deputy of the defendant Kinkead as such constable.   Heard was also made a defendant.   The complaint avers that the act of killing was committed under color of a warrant for the arrest of Thomas, to answer for a misdemeanor charged against him before a justice of the peace, and that it was done wantonly and without cause.

The defendants by their pleading justify the killing as having been done by Heard in self-defense, while lawfully exercising his power to execute the warrant mentioned in the complaint, and while Thomas was unlawfully resisting arrest and attempting to escape.   The appeal is from a judgment rendered on the verdict of a jury against the plaintiffs.

The death of Thomas resulted from a wound inflicted by a pistol-shot, and the evidence as to the immediate circumstances of the homicide was such as to make it questionable whether he had been actually placed under arrest before he was shot.   It was contended at the trial that his arrest had been accomplished, and that he was killed while attempting to break away from the custody of the officer.   As applicable to this view of the facts, the court, against the objection of the plaintiffs, gave the jury the following instruction : " If the jury find from the evidence that Heard had actually arrested Thomas, whether for felony or misdemeanor, if Thomas attempted to get away, Heard had a right to shoot him, if this shooting was necessary to prevent his escape; provided Heard acted in the exercise of due caution and prudence."

In repeating substantially the same charge in a different

connection, the jury were told that life can be taken to prevent an escape only in case of extreme necessity and when the officer has exhausted all other means of enforcing the prisoner's submission. The duty which the law enjoins upon an officer to exercise his authority with discretion and prudence was also fully and properly stated, and the jury were in effect instructed that the needless killing of a prisoner would in all cases be wrongful. In another part of the charge, it was stated, as an admission of the pleadings, that the offense of which Thomas was accused was a misdemeanor. And in other respects the charge of the court was such that the plaintiffs were not prejudiced by the instruction we have quoted, if the life of a prisoner may be taken under any circumstances merely to prevent his escape after arrest for a misdemeanor.

The doctrine of the court's charge is approved by Mr. Bishop, who states it in his work on Criminal Procedure substantially in the language employed by the trial judge. 1 Bishop, Cr. Pro., sec 161. In his note on the section cited, the author refers to his work on Criminal Law (vol. 2, secs. 647, 650) and to two cases decided by the Supreme Court of Texas—*Caldwell* v. *State*, 41 Texas, 86, and *Wright* v. *State*, 44 Texas, 645. In the first of these cases, a prisoner who had been arrested for horse stealing broke away from the custody of the officer, and the latter shot and killed him as he ran in the effort to make his escape. It was held that the officer was rightfully convicted of murder in the second degree—the evidence showing that the prisoner was unarmed and neither attacking nor resisting the officer. The judge who delivered the opinion said : "The law places too high an estimate upon a man's life, though he be * * a prisoner, to permit an officer to kill him while unresisting, simply to prevent an escape." But as the arrest was for a felony, it may be that the decision was controlled by a statute of that State which provides that an " officer executing an order of arrest shall not in any case kill one who attempts to escape, unless in making or attempting such

·escape, the life of the officer is endangered or he is threatened with great bodily injury." However that may have been, the case gives no support to the text in connection with which it is cited. Nor is such support to be found in the ·case of *Wright* v. *State*, where the decision was that the power conferred by a Texas statute upon an officer having the custody of a convicted felon to take the life of the prisoner to prevent his escape does not extend to an officer attempting to re-arrest an escaped convict.

The rule laid down without qualification in " Criminal Pro-·ceedure " is stated only as " a general proposition " in one of the sections referred to in the work on Criminal Law. From the text of the latter reference is made to the treatise of Russell on Crimes and to the earlier works of Hale and Hawkins. But these writers all appear to limit the applica·tion of the rule to cases of felony or to cases where the jailer or other officer having the custody of a prisoner is assaulted by the latter in his effort to escape and the officer kills him in self-defense. 1 Hale, P. C., 481, 496; 1 Russell on Crimes, 666, 667; 1 Hawkins, P. C., 81, 82. The decisions cited by Mr. Bishop in the section last referred to, as far as we have had the opportunity to examine them, go no further than the authors we have mentioned. *U. S.* v. *Jailer, etc.*, 2 Abb., 265; *State* v. *Anderson*, 1 Hill, S. C., 327; *Regina* v. *Dadson*, 14 Jur., 1051. See also 4 Blackstone, 180.

The case of *State* v. *Sigman*, 106 N. C., 728; S. C., 11 S. E. Rep., 520, is relied upon as sustaining the instruction in ·question. In that case an officer was indicted for an assault with a deadly weapon, committed by discharging a pistol at a person accused of a misdemeanor, and who had escaped ·from the officer's custody and was fleeing to avoid re-arrest. The officer being unable to overtake the prisoner fired upon him. He was convicted, and the judgment of the trial court was affirmed, the Supreme Court holding that the defendant was guilty of an assault, whether his intention in firing was ·to hit the escaped prisoner or simply to intimidate him and

thereby induce him to surrender. This ruling followed as a conclusion from two propositions stated in the opinion. These are: (1.) That an officer who kills a person charged with a misdemeanor and fleeing from him to avoid arrest will at least be guilty of manslaughter. (2.) That where a prisoner "has already escaped," no means can be used to re-capture him which would not have been justifiable in making the first arrest; and that if in pursuing him the officer intentionally kills him, it is murder. But the second proposition is preceded by the following pa of the opinion upon which the appellees specially ' After an accused person has been arrested, an officer ustified to detain him in custody, and he may kill h oner to prevent his escape; provided it becomes nece whether he be charged with a felony or a misdemeanor Citing the first volume of Bishop's Criminal Procedure. The view thus expressed does not appear to be consistent with the court's decision. Nor does it seem to be an unqualified approval of the rule as it is stated in Bishop's Criminal Procedure. As stated in the quotation made, it seems to be laid down with reference only to cases where a prisoner resists by force the effort of the officer to prevent him from "breaking away" and is killed in the struggle or affray which follows. In the case then before the court the prisoner had entirely escaped; and having been subsequently found had run some distance before he was shot at. There was no occasion therefore for deciding whether the shooting, although not in self-defense, would have been justifiable if it had been done in an effort to detain the prisoner in the officer's custody. But we are wholly unable to perceive any ground for a distinction between the latter case and that on which the court's ruling was made. In a paragraph of the opinion preceding that from which we have quoted, in speaking of the case of one who, being charged with a misdemeanor, flees from the officer to avoid arrest, the court said: "The accused is shielded, * * * even from an attempt to kill, * * * by the merciful rule which for-

bids the risk of human life or the shedding of blood in or-
der to bring to justice one who is charged with so trivial an
offence, when it is probable that he can be arrested another
day and held to answer." This humane principle was per-
mitted to prevail against the officer in the case decided, al-
though the person assaulted had been arrested and was shot
at in the endeavor made to re-arrest him. Why should it
not also protect the life of the prisoner arrested on a similar
charge who endeavors forcibly to break away from the offi-
cer but offers no violence to the latter endangering his life
or exposing his person to great harm ?

The case of *Head* v. *Martin*, 3 S. W. Rep., (Ky.), 622, is
also cited by the appellees. But the only ruling there made,
as indicated by the syllabus, was that a peace officer, having
arrested one accused of a misdemeanor, cannot, when he is
fleeing, kill him to prevent his escape; and all that the court
says is strongly against the contention of the appellee on
the point we are considering. On the point embraced in the
quotation of counsel from the opinion, in that case, the jury
in the present case were properly charged by instructions
other than that now under consideration. The only ques-
tion presented by the latter is whether an officer having in
his custody a prisoner accused of a misdemeanor may take
his life if he attempts to break away, where, in the language
of the court's charge, "no other means are available" to
prevent his escape. A resort to a measure so extreme in
cases of misdemeanor was never permitted by the common
law. 1 East, P. C., 302. That law has not, it is believed,
lost any of its humanity since the time of the writer we have
just cited ; and no statute of this State operates to restrain
its mercy. We have adopted its rule in making arrests in
cases of felony. (*Carr* v. *The State*, 43 Ark., 99.) But
without legislative authority the severity of a remote age
ought not to be exceeded in dealing with those who are ac-
cused of smaller offenses.

East, in his Pleas of the Crown, after stating the rule that a
felon fleeing from justice may be lawfully killed "where he

cannot be otherwise overtaken," says : " The same rule holds if a felon after arrest break away as he is carrying to gaol, and his pursuers cannot retake without killing him. But if he may be taken in any case without such severity, it is at least manslaughter in him who kills him." (1 East, P. C., 298.) No distinction, it will be noticed, is made between the case of a felon fleeing from arrest and that of one " breaking away " after arrest ; and such is still the law. No reason whatever is given for making such a distinction in cases of misdemeanor, and we have found no adjudged case which in our opinion supports it. See *Clements* v. *State*, 50 Ala., 117 ; *Head* v. *Martin*, 3 S. W., *supra; Reneau* v. *State*, 2 Lea, 720.

In *United States* v. *Clark*, 31 Fed. Rep., 710, Mr. Justice Brown says : " The general rule is well settled, by elementary writers upon criminal law, that an officer having custody of a person charged with felony may take his life, if it becomes absolutely necessary to do so to prevent his escape ; but he may not do this if he be charged simply with a misdemeanor, the theory of the law being that it is better that a misdemeanant escape than that human life be taken." And he expresses a doubt whether the law permitting life to be taken to prevent an escape is applicable at the present day even to all cases of felony. (See also *State* v. *Bryant*, 65 N. C., 327); *Reneau* v. *State*, 2 Lea, *supra.*

It has been said that the officers of the law are " clothed with its sanctity" and "represent its majesty." *Head* v. *Martin*, 3 S. W. Rep., 623. And the criminal code has provided for the punishment of those who resist or assault them when engaged in the discharge of their duties. Mansf. Dig., secs. 1765-1767. But the law-making power itself could not, under the constitution, inflict the death penalty as a punishment for a simple misdemeanor. (Art. 2, sec. 9, const.) And it would ill become the " majesty " of the law to sacrifice a human life to avoid a failure of justice in the case of a petty offender who is often brought into court without arrest and dismissed with a nominal fine. It is admitted that an officer

cannot lawfully kill one who merely flees to avoid arrest for a misdemeanor, although it may appear that he can never be taken otherwise. If he runs, then, before the officer has laid his hands upon him with words of arrest, he may do so without danger to his life. But if, by surprise or otherwise, he be for a moment sufficiently restrained to constitute an arrest and then "break away," the officer may kill him if he cannot overtake him. Such is the effect of the argument and of the rule in support of which it is made. We can see no principle of reason or justice on which such a distinction can rest, and we therefore hold that the force or violence which an officer may lawfully use to prevent the escape of a person arrested for a misdemeanor is no greater than such as might have been rightfully employed to effect his arrest. In making the arrest or preventing the escape, the officer may exert such physical force as is necessary on the one hand to effect the arrest by overcoming the resistance he encounters, or on the other to subdue the efforts of the prisoner to escape; but he cannot in either case take the life of the accused, or even inflict upon him a great bodily harm, except to save his own life or to prevent a like harm to himself.

The circuit court erred in so much of its charge as was not in harmony with this statement of the law. In other respects the instructions contain no error prejudicial to the appellant. For the error indicated the judgment will be reversed, and the cause remanded for a new trial.