SCHOOL DISTRICT NO. 80 IN MORRISON COUNTY v. F. D. LAPPING
and Others.[1]

February 15, 1907.

Nos. 15,008—(150).

**Bond—Principal and Sureties.**

A bond, purporting to be the obligation of one as principal and of others as sureties, but which has been executed only by the sureties, does not upon its face show any obligation on the part of the sureties. State v. Austin, 35 Minn. 51.

**Finding—Evidence.**

The evidence sustains the finding of the trial court that sureties upon a school district treasurer's bond executed it upon the supposition that the treasurer had signed it as principal, and that they did not intend the instrument should be delivered as their bond without his signature.

**Same.**

It was competent for the sureties to testify that, in signing the bond and leaving it with the school officer, it was not their intention to deliver the bond without the principal's signature.

**Form of Question.**

No errors in the form of the question on this subject.

Action in the district court for Morrison county to recover $209.88 on the bond of plaintiff's treasurer. The case was tried before Searle, J., who made findings and ordered judgment in favor of defendants. From the judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Lindbergh & Blanchard,* for appellant.

*Stewart & Brower* and *R. S. Clarke,* for respondents.

LEWIS, J.

Action upon a treasurer's bond. Defense, that the bond was executed by respondents with the intention that it should become a binding ob-

[1]Reported in 110 N. W. 849.

ligation only in case of its execution by the treasurer as principal. Judgment entered for respondents.

F. D. Lapping, having been elected treasurer of school district number 80 in Morrison county, was required to execute and deliver a bond conditioned upon the faithful discharge of his duties. The bond was prepared by the clerk, Martin, and respondents were requested by Lapping to execute the same as sureties. According to Martin, who testified for appellant, Lapping notified him that he was ready with his bondsmen to qualify; that he (Martin) then filled out the bond and each of the sureties signed and acknowledged it. On cross-examination, Martin stated that, when he received the bond after execution, he did not notice that Lapping had not signed it. The bond was in fact accepted without the signature of the treasurer.

Respondent Ragan testified that Lapping, as treasurer, Foss and Van Alstine, the other sureties, and Barton and Chesney, came to his store for the purpose of executing the bond; that Martin filled out the bond and called Lapping to sign it; that Lapping stepped around and made a stroke with his pen, and that he (Ragan) thought Lapping signed the bond; that Foss was next called by the clerk, and Ragan last. The witness said he did not notice whether Lapping had in fact signed the bond, but that he saw him go through the motions of doing so; that, after the three sureties had signed the bond, the clerk took it away, and that was the last he saw of it. The witness stated that he believed Lapping had signed the bond, and that it was not his intention to be bound as surety only, and expected Lapping to sign the bond, and supposed he had done so, and did not at that time know that he had not.

Respondent Foss testified that Van Alstine was the first to sign.

> Q. Did you see this circumstance Mr. Ragan testifies to of Lapping sitting down and going through the motions of signing it? A. It looked that way to me. He was up there, I know that. * * * Q. Now, at the time you signed it, did you know that Lapping had not signed it? A. No; I did not. Q. What was your belief about it? A. Why, I thought he signed it. * * * Q. And was it your intention, Mr. Foss, to be bound without—to be bound as surety without Mr. Lapping signing as principal? A. No, sir.

The witness stated that he did not, until a considerable time thereafter, know that Lapping had not signed the bond.

Respondent Van Alstine testified that Lapping had asked him if he would sign with him, and that Martin, the clerk, asked him if he was willing to go as surety on the bond with Lapping; that he went down to sign the bond, and did not notice that Lapping had not signed it; that he started to sign it in the wrong place, when the clerk called his attention to it and indicated the proper place to sign, whereupon he did so. The witness stated it was not his intention to be bound without Lapping signing the bond, and that he did not learn of Lapping's failure to do so until some time later.

Upon this evidence the court found that Lapping solicited respondents to execute the bond as sureties for him as treasurer; that the bond was approved by the school district and clerk, but was in fact never signed by Lapping, the treasurer; that it was not the intention of respondents to become bound by the bond, or to enter into the relation of sureties for Lapping without his signature thereto, and that it was not the intention of the officials that respondents should become bound as sureties without the signature of the treasurer; and that respondents believed that the treasurer had duly executed the bond until the fact was disclosed some time after its execution.

1. A bond, purporting to be the obligation of one as principal and of others as sureties, but which has been executed only by the sureties, does not upon its face show any obligation on the part of such sureties. State v. Austin, 35 Minn. 51, 26 N. W. 906. This rule was followed in Bjoin v. Anglim, 97 Minn. 526, 107 N. W. 558, where it was held that the complaint in an action upon such a bond was insufficient; it not appearing that the sureties waived the execution of the bond by the principal and authorized its delivery to the obligee as a valid obligation.

In the present action the complaint alleges that, when signing the bond, the sureties knew Lapping had not signed it, but intended to become bound by the instrument without his signature, and duly delivered the same to the school district as the bond of the treasurer and of themselves. These allegations were put in issue by the answer, and the main question is whether the evidence supports the findings. In Martin v. Hornsby, 55 Minn 187, 56 N. W. 751, 43 Am. St. 487, the

sureties signed and acknowledged a notary bond with the understanding and expectation that the notary would execute the same as principal before it was delivered. The court held that the evidence did not show delivery of the bond by the sureties, or that they were estopped by their conduct from denying its validity. The same question was before the court in Van Norman v. Barbeau, 54 Minn. 388, 55 N. W. 1112. There it was held that, where one of several sureties named in a bond neglects or refuses to sign the same, if all the others sign with the principal obligor, and the same is unconditionally delivered to the obligee in their presence and without objection on their part, they will be deemed to have waived the omission to procure the signature of the remaining surety. The same question came up in Safranski v. St. Paul, M. & M. Ry. Co., 72 Minn. 185, 75 N. W. 17, and it was held that under the evidence in that case the sureties intended to be bound without the signature of their principal, although named as such in the body of the bond. State v. Austin and Martin v. Hornsby, supra, were considered and distinguished. The evidence was held sufficient, for the reason that the sureties executed the bond in the place usually signed by the principal, and that the sureties were the president and secretary, respectively, of the railway company.

In the present case, if the evidence is true, the sureties accompanied the treasurer to the store with the intention of executing the bond with Lapping, and from his conduct had reason to suppose that he had signed the bond, and they permitted it to remain in the hands of the clerk, or director, upon the supposition that it had been executed by Lapping, and there is nothing in the evidence to indicate any intention on their part that the obligation should become binding upon them without the execution of the bond by the treasurer. Although one of them signed the bond in the place where the principal usually signs, he testified that the clerk pointed out that place for his signature. It must not be forgotten that men frequently called upon to execute such bonds are ignorant of the form and manner of their execution, and are liable to write their names in the wrong place unless properly directed. So far as the evidence shows, the sureties were quite excusable for not observing that the principal had not already signed the bond, when the clerk himself assumed that it had been signed by the treasurer, and

so treated it until discovered at a subsequent period. The evidence is sufficient to sustain the findings.

2. Respondents were permitted, over the objection of appellant, to answer the following questions: "What was your belief in regard to his having signed it?" "Was it your intention at that time to be bound as surety without Mr. Lapping, the treasurer, having signed it?" "You say you did not intend to be bound without his signing it?" "It was your intention to be bound if Lapping was bound?" It is urged that the ruling was erroneous, for the reason that the secret or undisclosed intent of the witnesses could not characterize what they did in signing the bond and permitting it to be delivered to the school officers; or, to put it another way, that the intention of the sureties must be determined by what they did and not by what they thought. The object of these questions was, not to disclose the legal effect of the witnesses' opinion, but to ascertain whether, as a matter of fact, there was any intention to execute and deliver the bond without the signature of the principal. Although one or two questions may be objectionable upon the ground that they ostensibly called for the views of the witness upon a legal question, no prejudice could have ensued, and the several answers amounted to no more than a declaration that, when they executed the bond, the witnesses supposed it had already been signed by the treasurer, and that they had no intention of delivering the instrument as a completed and binding obligation without his signature.

In Berkey v. Judd, 22 Minn. 287, the principle was announced that, whenever the motive, belief, or intention of any person is a material fact to be proved under the issue on trial, it is competent to prove it by direct testimony of such person, whether he happens to be a party to the action or not. The question under consideration was whether or not plaintiff relied upon the correctness of an exhibit which had been furnished him by the opposing party. The court held that whether or not he did so rely was a material fact to be proven in the case. The same rule was applied in Garrett v. Mannheimer, 24 Minn. 193, a malicious prosecution action, and it was held proper for the defendant to testify that at the time he instituted the suit complained of he believed that he had a legal and valid claim against the plaintiff. Such is the general rule. 7 Enc. Ev. 596, et seq.

No error. Judgment affirmed.

**BROWN, J. (dissenting.)**

I dissent. The undisputed fact that the sureties signed, acknowledged, and unconditionally delivered the bond to the school district officers, without the signature of their principal attached thereto, estops them from now questioning their liability for his default. They cannot be heard to say that they did not "intend to be bound" without his signature. His failure to sign worked no substantial injury to them. It neither enlarged nor diminished their liability, and they should not be relieved by an application of technical rules of law.