EDGIN v. TALLEY.

Opinion delivered November 2, 1925.

1.  ARREST—RIGHT TO USE FORCE.—In making an arrest or preventing the escape of one charged with a misdemeanor, an officer may exert such physical force as is necessary on the one hand to effect the arrest by overcoming the resistance he encounters or on the other hand to subdue the efforts of the prisoner to escape; but he cannot in either case take the life of the accused or even inflict upon him a great bodily harm, except to save his own life or prevent a like harm to himself.

2.  OFFICES AND OFFICERS—LIABILITY FOR ACTS OF DEPUTY.—Both at common law and by statute a sheriff is liable for an unlawful assault made by his deputy, while in the discharge of his official duty.

3.  ARREST—NECESSITY OF WARRANT.—A misdemeanor must have been actually committed to justify an arrest without a warrant,

and the officer must determine at his peril whether an offense has been committed or not.

4. ASSAULT AND BATTERY—LIABILITY FOR DAMAGES.—Where an officer, in good faith believing that plaintiff had committed a misdemeanor after ordering him to stop, shot at his tire casings to prevent him from escaping arrest, and thereby injured his automobile, but inflicted no personal injury on plaintiff, the officer is not liable for the damages to the automobile.

5. ASSAULT AND BATTERY—LIABILITY FOR DAMAGES.—Where a deputy sheriff, believing that the driver of an automobile was drunk, in order to prevent him from escaping arrest, shot at his tire casings and injured a person riding in the car, the sheriff, as well as the deputy, is responsible for the damages to such person.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran,* Judge; reversed in part.

STATEMENT BY THE COURT.

George Edgin and Goldia Floyd, minors, by next friend, instituted separate actions at law against Claud Talley and C. G. Harman to recover damages for an assault.

George Edgin was a witness for himself. According to his testimony he was twenty years of age and had lived at Ozark, Franklin County, Ark., nearly all of his life. On the Sunday in question he had driven in his automobile from Altus to Ozark with Goldia Floyd and some other companions for the purpose of attending a singing convention. After attending the singing convention at the court house, they drove on up town to a filling station at a moderate rate of speed, something like eight or ten miles an hour. George Edgin heard some one call for some one to stop, but did not pay any attention to it. There were a large number of people on the public square, and he was not impressed that any one was calling to him. The first he knew a bullet came through the car, hitting the wind shield and it commenced falling out. The bullet went between George Edgin and Goldia Floyd. Two shots were fired, but just one of them went through the car. The witness then immediately stopped the car, but did not know who did

the shooting until Claud Talley came down to the car. Talley then arrested the witness and carried him to jail. He refused to let him make bond, but locked him up in the jail and kept him there something over an hour. No warrant of any kind was served on the witness. No charge was afterwards preferred against him. The witness offered no resistance whatever and was not undertaking to assault or injure Talley in any way at the time. He knew that Talley was an officer, but did not know that he or any other officer wanted him for any purpose.

Other witnesses testified in behalf of appellant, George Edgin, and corroborated his testimony.

George Edgin testified that he was not drinking or drunk at the time he was arrested and several witnesses corroborated his testimony in this respect.

Goldia Floyd was a witness for herself. According to her testimony, she was seventeen years of age and lived at Dyer, Ark. She was in Ozark on the Sunday in question, and was riding on the same seat in the car with George Edgin. She did not hear any one say "Stop," or anything of that kind. There were two shots fired. One of the shots went through the car, and the bullet went through her hair on the left side and burned it. The bullet also struck the wind shield and broke the glass in it. The glass from the wind shield struck her and caused an injury to her leg. She was confined to her bed about two weeks as the result of her injuries, and it was a month before she was able to take up her studies at school. She was rendered very nervous by her injuries, and this condition continued about two weeks.

The physician who attended her described her injuries. He found one place just above her knee pretty badly cut and one cut below her knee. She was very nervous, and her nervous shock was caused from some injury.

According to the testimony of Claud Talley, one of the defendants, he lived in Ozark and had been deputy sheriff and jailer of Franklin County for thirty-eight months before the Sunday in question. He was still

deputy sheriff at that time, and as such received information that George Edgin and others were drunk on the public road towards Altus. Shortly after this information was received, Talley saw George Edgin driving a car along the streets of Ozark. He said, "Hold on, George, I want to see you." He then called to Fred Wilson to have George stop the car. Fred put his head in the car and said something to George. Talley then called to George Edgin again to stop, and, upon his failing to do so, he fired his pistol at the casing on the car. He fired two shots at the car, and the next thing he heard was a woman screaming, and then the car stopped. C. G. Harmon, the sheriff, was there taking George Edgin out of the car when he reached him. There were two girls in the car, but he did not know it until after he fired the two shots. The sheriff turned George Edgin over to Talley, who took him to jail and kept him there for a while. Talley did not shoot at Edgin, but shot at the tires of the car to cause him to stop it. The bullet that went through the car struck something first. The purpose and intention of Talley in firing the shots was to disable the car and cause it to stop.

Other witnesses corroborated Talley in his testimony both as to the shooting and as to the drunkenness of George Edgin.

According to the testimony of C. G. Harman, he had been sheriff of Franklin County for three years at the time of the shooting. Just previous to the shooting, Talley and Harman had been down on the river looking for some law violators. Harman received information that George Edgin and others were drunk, and were likely to hurt some one. When Harman got back to Ozark, and just after he separated from Talley, he heard some one say, "Halt" or "Stop." He heard this two or three times and then heard a gun shoot. When he looked around, he saw some one coming down the street in a car and ran out in front of it. Just about that time he heard the second shot. Then he heard some girl scream and ran to the car and jerked its door open. By that time

the crowd had gathered, and Talley walked up to the car. Harman put George Edgin under arrest for drunkenness and directed Talley to carry him to jail, and when he was sober enough to turn him out.

On cross-examination, Harman testified that he guessed that he directed Talley to arrest Edgin if he came to town on the day in question. George Edgin was drunk at the time he was arrested and was not able to take care of himself. Talley was directed to take George Edgin home as soon as he was sober enough. Harman · also stated that he never directed his deputies to shoot at anything except the casings of a car to stop it.

The cases were consolidated for the purpose of trial, and in each case the jury returned a verdict in favor of appellees. The case is here on appeal.

*Benson & Benson* and *Dave Partain*, for appellants.

*G. C. Carter* and *Evans & Evans*, for appellee.

HART, J., (after stating the facts). In the case of *Thomas v. Kinkead*, 55 Ark. 502, Judge MANSFIELD made a thorough examination of the principles of law governing cases of this sort in an action wherein a constable was sued for damages for the unjustifiable shooting and killing by his deputy of a person charged with the commission of a misdemeanor to prevent his escape after being arrested. The court reversed a verdict for the defendant because of the charge of the trial court that the defendant had a right to shoot deceased if it was necessary to prevent his escape. It was said that the force which an officer may lawfully use to prevent the escape of one arrested for a misdemeanor is no greater than such as might have been rightfully employed to effect his arrest. The officer cannot in either case take the life of the accused or inflict great bodily harm except to save his own life or prevent a like injury to himself.

The learned justice concluded his review of the authorities and a statement of the rule of the common law as follows:

"We can see no principle of reason or justice on which such a distinction can rest, and we therefore hold

that the force or violence which an officer may lawfully use to prevent the escape of a person arrested for a misdemeanor is no greater than such as might have been rightfully employed to effect his arrest. In making the arrest or preventing the escape, the officer may exert such physical force as is necessary on the one hand to effect the arrest by overcoming the resistance he encounters, or on the other to subdue the efforts of the prisoner to escape; but he cannot in either case take the life of the accused, or even inflict upon him a great bodily harm, except to save his own life or to prevent a like harm to himself.'' See also case note to 3 A. L. R. at p. 1173.

The general rule is that for all civil purposes the acts of a deputy sheriff or constable are those of his principal. Hence a sheriff or constable is liable for the act, default, tort, or other misconduct done or committed by his deputy, *colore officii. Moores v. Winter,* 67 Ark. 189; *Frizzell v. Duffer,* 58 Ark. 612; 35 Cyc. 1618, and 24 R. C. L. p. 982, § 75.

It will be noted that this rule was recognized and followed in *Thomas v. Kinkead,* 55 Ark. 502, although the rule itself was not announced or commented on.

Again in *State v. Newton,* 33 Ark. 276, the court held that the State Treasurer and his bondsmen are liable for the official conduct of his deputies.

Then too § 9152 of Crawford & Moses' Digest provides that each sheriff may appoint one or more deputies, for whose official conduct he shall be responsible. Thus it will be seen that a sheriff is liable, both under the common law and under our statute, for an unlawful assault made by his deputy while in the discharge of his official duty. Under our statute, it is made a misdemeanor to drive any automobile over any of the streets of any city or town or any public highway in the State while in an intoxicated condition. General Acts of Arkansas 1923, p. 200.

Section 2904 of Crawford & Moses' Digest provides that a peace officer may make arrests without a warrant where a public offense is committed in his presence.

In *Coen* v. *Presby*, 14 Gray (Mass.) 65, it was held that reasonable cause to believe a person to be intoxicated is sufficient to excuse an arrest without a warrant. In discussing the principle in *Ballard* v. *State*, 43 Ohio St. 340, 1 N. E. 76, the court said that good faith, an honest belief, based upon reliable information, which proves to be true, is all the law requires. In that case the person was arrested for carrying concealed weapons. Thus it will be seen that a misdemeanor must have been actually committed to justify an arrest without a warrant, and the officer must determine at his peril whether an offense has been committed or not.

It was the theory of the appellant, George Edgin, that he was not drunk at the time he was arrested, and evidence was introduced by him to that effect. On the other hand, appellees testified that they had been informed that he was drunk and likely to hurt someone, and that they arrested him on this account. The deputy sheriff denied that he fired at Edgin, and says that the pistol shots were fired by him only to intimidate and cause George Edgin to surrender, who, he had been informed, was driving an automobile in a drunken condition on the public highway. The pistol shots were not fired at George Edgin, and neither of them struck him or caused him any physical injury.

If the jury believed the testimony of the deputy sheriff (and by its verdict it has so found) that the shots fired by him were only to accomplish the arrest of Geo. Edgin, it can not in law be considered an assault and battery for which the officer can be punished. *Mesmer* v. *Commonwealth*, 26 Gratt. (Va.) p. 976.

The deputy sheriff, having been informed that George Edgin was driving an automobile in a drunken condition along the highway, had the right under the law to arrest him, if he was drunk when found by the deputy sheriff.

The jury was fully and fairly instructed in accordance with the principles of law above announced, and the respective theories of appellant, George Edgin, and

appellees, were submitted to the jury in appropriate instructions. The jury having by its verdict found the facts in favor of appellee, appellant, George Edgin, is in no attitude to complain. It cannot be said that he is entitled to recover for the injury to his automobile as the result of the shots fired by the deputy sheriff. Although he might have believed that he was being illegally arrested, it was his duty to have submitted to the officers. *Coats* v. *State,* 101 Ark. 51.

George Edgin lived in Ozark, and knew that Talley was a deputy sheriff. It is true that he says that he did not hear Talley order him to stop; but here again the evidence is conflicting, and the jury under proper instructions found in favor of appellees on this point. According to the testimony of the deputy sheriff, Edgin must have known that he was being ordered by him to stop. Talley says that he called to him to stop several times, and that one of the persons in the car leaned over and whispered something to George Edgin. Other people further away from Talley than Edgin and his companions heard Talley call to them to stop. Hence the jury might have inferred that Edgin heard Talley tell him to stop, and that he drove on, knowing Talley to be an officer, for the purpose of escaping arrest.

The jury might also have found that George Edgin was drunk at the time. According to the testimony of Talley he did not shoot at Edgin, but only shot for the purpose of stopping his car, so that he might arrest him for being drunk in violation of law. Under these circumstances there would be no civil liability on the part of appellees for the injury done to the automobile of George Edgin.

Again it is insisted by counsel for appellant, George Edgin, that the judgment should be reversed because the court allowed Mrs. Harman, the wife of the sheriff, to state that she had received word at the jail that George Edgin was drunk and might kill some one; and that she communicated this statement to her husband and Talley.

According to the testimony of both Harman and Talley, they intended to arrest George Edgin because of receiving this information. The important fact was that they had received the information from an authentic source, and the fact that the wife of one of the appellees was the source of information cuts no figure in the case at all. The case stands in no different attitude than it would if Harmon and Talley had stated that they had received information from a reliable source that George Edgin was driving an automobile along the public highway in a drunken condition. As we have already seen, under our statute it is the duty of peace officers who shall see or have knowledge of any person being drunk upon any public highway or street in this State to arrest such person. So, if the deputy sheriff had received knowledge from any authentic source that George Edgin was drunk upon the highway or streets of the city, it would be his duty under the statute to arrest Edgin when found, if Edgin was still drunk, since drunkenness is a continuing offense and would be committed in the presence of the officer under such circumstances. Therefore, we hold that this assignment of error was not well taken.

The result of our views is that no prejudicial error was committed by the court in the trial of the case of George Edgin, and the judgment in his case must therefore be affirmed.

The case of Goldia Floyd however stands on a different footing. The evidence discloses that one of the pistol shots went through her hair and burned it. The bullet then passed through the wind shield of the automobile, breaking it, and thereby causing the glass to violently strike her leg and cut it. She was compelled to remain in bed for two weeks as the result of her injuries, and it was a month before she had sufficiently recovered from her injuries to attend school.

The undisputed evidence shows that she received severe physical injuries as a result of a pistol shot at the hands of Talley, and, under the principles of law above announced, his firing the pistol under the circumstances

and thereby injuring Goldia Floyd in her person was a reckless and careless act which rendered him and his principal civilly liable in damages.

The duty of Talley to arrest George Edgin for driving an automobile along the streets while drunk, which was a misdemeanor, did not justify the use of firearms, and firing his pistol under the circumstances as shown by his own testimony rendered him liable for the physical injury to Goldia Floyd. While Talley had the right to carry loaded firearms in the discharge of his official duties, he had no right to use them in a negligent and careless manner, and he is liable for the unjustifiable discharge of his pistol to check the flight of George Edgin, who had only committed a misdemeanor. The undisputed evidence shows that Edgin was at most only attempting to escape, and Talley was not justified in shooting at him, even as a ruse to prevent his further flight.

It follows that the judgment against Goldia Floyd will be reversed, and the cause will be remanded for a new trial.

WOOD, J., dissents on the ground that in his opinion the judgment should be affirmed as against Goldia Floyd also.