WHITLOCK *v.* WOOD.

4-4529

Opinion delivered February 22, 1937.

*Rains & Rains,* for appellants.

*D. H. Howell* and *Starbird & Starbird,* for appellees.

GRIFFIN SMITH, C. J. John Wood, Sr., and John Wood, Jr., father and son, as constable and deputy constable, respectively, and R. F. Hamer and Drennan Byars, official bondsmen of John Wood, Sr., were sued by Roy Whitlock, father and next friend of Ayers Whitlock, a minor. It was alleged that Ayers Whitlock stopped where a game was in progress, and John Wood, Jr., acting as deputy constable, raided the group; that Whitlock started walking away and failed to halt when

commanded by Wood to do so, as a consequence of which Wood shot and seriously wounded him.

The complaint recites the election of John Wood, Sr., in November, 1934; his qualification; execution and approval of bond, and the breach of duty through action of the deputy. There was an amendment to the complaint which set out that "at the time of the execution of the constable's bond, John Wood, Sr., failed to actually sign said bond, but * * * it was the purpose and intent of the said John Wood, Sr., to sign said bond, and his failure to sign was not due to his refusal, but was in fact a mere oversight on his part."

The further allegation was made that Hamer and Byars, sureties, "signed with the intent and purpose of becoming sureties of John Wood, Sr., and believing that said bond had in fact actually been signed by said John Wood, Sr."

Following is the bond: "Know all Men by These Presents, That John Wood, Sr., as principal, and..................... as sureties, are held and firmly bound unto Crawford county in the sum of $500.00, payment whereof well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly by these presents. Dated at Van Buren, Arkansas, on the first day of January, 1935. Whereas, the above bounden John Wood, Sr., was on the 6th day of November, 1934, elected to the office of constable of Alma township, Crawford county, Arkansas. Therefore, the condition of the above bond is such that if the said John Wood, Sr., shall well, truly and faithfully discharge and perform the duties of his office, and at the expiration of the term of his office shall render unto his successor in office a correct account of all sums of money, books, goods, valuables, and other property, as it comes into his custody as such constable of Alma township, and shall pay and deliver to his successor in office, or any other person authorized to receive the same, all balances, sums of money, books, goods, valuables, and other property, which shall be in his hands and due by him, then the above obligation shall be null and void; else the same to remain in full force and virtue." .Then appear the

signatures of Hamer and Byars, with their affidavits attesting the net worth of each.

The trial court sustained demurrers of the sureties, but did not pass upon separate demurrers filed by the constable and his deputy. This appeal is from the action of the court in sustaining demurrers of the sureties.

The amount of force an officer is justified in using in making an arrest is reviewed in *Edgin* v. *Talley*, 169 Ark. 662, 276 S. W. 591, 42 A. L. R. 1194. The opinion was written by Chief Justice Hart, who said: "In the case of *Thomas* v. *Kinkead*, 55 Ark. 502, 18 S. W. 854, 15 L. R. A. 558, 29 Am. St. Rep. 68, Judge Mansfield made a thorough examination of the principles of law governing an action wherein a constable was sued for damages for the unjustifiable shooting and killing by his deputy of a person charged with the commission of a misdemeanor to prevent his escape after being arrested. It was said that the force which an officer may lawfully use to prevent the escape of one arrested for a misdemeanor is no greater than such as might have been rightfully employed to effect his arrest. The officer cannot in either case take the life of the accused or inflict great bodily harm except to save his own life or prevent a like injury to himself.

"The general rule is that for all civil purposes the acts of a deputy sheriff or constable are those of his principal. Hence a sheriff or constable is liable for the act, default, tort, or other misconduct done or committed by his deputy, *colore officii. Moores* v. *Winter*, 67 Ark. 189, 53 S. W. 1057; *Frizzell* v. *Duffer*, 58 Ark. 612, 25 S. W. 1111. It will be noted that this rule was recognized and followed in *Thomas* v. *Kinkead*, 55 Ark. 502, 18 S. W. 854, 15 L. R. A. 558, 29 Am. St. Rep. 68, although the rule itself was not announced or commented on."

The opinion concludes with the following statement: "While Talley (deputy sheriff) had the right to carry loaded firearms in the discharge of his official duties, he had no right to use them in a negligent and careless manner, and he is liable for the unjustifiable discharge of his pistol to check the flight of George Edgin, who had only committed a misdemeanor. The undisputed evidence shows that Edgin was at most only trying to escape, and

Talley was not justified in shooting at him, even as a ruse to prevent further flight."

The law as outlined, *supra,* is definitely settled. But the question presented by this appeal is not whether these defendants would be liable, but did the trial court commit error in sustaining demurrers as to the sureties?

It is admitted that the bond, although signed and acknowledged by Hamer and Byars, was not signed by Wood.

Section 1444, Crawford & Moses' Digest, provides that: "Every constable shall, within ten days after his election or appointment, enter into bond to the State of Arkansas, with good and sufficient securities, in any sum not less than five hundred nor more than five thousand dollars, conditioned that he will execute all process to him directed and delivered, and pay over all moneys received by him by virtue of his office, and in every respect discharge all the duties of constable according to law." Section 1447 directs how the bond shall be filed, and provides that "it may be sued on at the instance of any person injured by its breach." Section 1448 makes constables conservators of the peace throughout the county, "and it shall be his duty to suppress all riots, routs, affrays, fights and unlawful assemblies, and he shall keep the peace, and shall cause all offenders to be arrested and taken before some justice of the peace, to be dealt with according to law, and shall well and truly present to the proper officer all affrays and other offenses against the laws of the state which shall come within his knowledge."

It will be seen that the affirmative duties enjoined by law upon constables require that such officers shall be something more than mere process servers in civil matters. Specifically, they are made conservators of the peace, and as Chief Justice HART pointed out in *Edgin v. Talley,* a constable has a right to carry loaded firearms in the discharge of his official duties, and he is obligated to "in every respect discharge all the duties of constable according to law." If it is the constable's duty to keep the peace, to suppress riots, etc., and if, to effectuate these results, he may carry arms and make arrests, the law superimposes a duty upon a duty—that is, he is required

to discharge the primary duty in a lawful and prudent manner.

But it is insisted that, since the bond was not actually signed by Wood, it is not binding on his sureties. As to the effect of such bond, the authorities are divided. A subtitle at page 1064, 46 C. J., reads as follows: "A requirement that an officer shall give a bond does not necessarily mean that he shall sign it, or that his signature is essential to its validity. Thus it has been broadly stated that since an officer is liable for his failure faithfully to perform the duties of the office without regard to a bond, a bond, although not signed by him, may be enforced against his sureties." In a collection of cases in 12 L. R. A. (N. S.), at page 1108, it is shown that courts of Illinois, Mississippi, Ohio, Arizona, Maine, Alabama, and Idaho, have affirmed the binding effect of such a bond, while in California, South Dakota, Indiana, Michigan, Minnesota and Missouri it has been denied. The case in chief under review in L. R. A., to which the citations were attached, is *School District No. 80* v. *Lapping,* 100 Minn. 139, 110 N. W. 849. The action was one on a treasurer's bond, and the defense of the sureties was that they signed the obligation with the intent, expressed in conversation, that it should not become binding upon them until the treasurer had signed it. The Supreme Court upheld the trial court in permitting the sureties to testify as to the intent, and they were excused on the ground that without the signature of the treasurer there was no binding obligation. In *Trustees of School* v. *Sheik,* 119 Ill. 579, 8 N. E. 189, 59 Am. Rep. 83, the evidence tended to show that the sureties signed with a promise by the principal that he would sign it before delivery to the obligee, and this was not done. The Supreme Court, after marshaling authorities, said: "We have given the authorities bearing on the question due consideration, and we are not inclined to adopt the view that a bond signed by the sureties without the signature of the principal may not be binding upon those executing it. If the sureties saw proper to bind themselves without the principal executing the bond and becoming bound, we think they might do so, and their undertaking is one that

may be enforced in the courts. The fact that the principal obligor in this case failed to sign the bond was a mere technicality which ought not to affect the rights of any of the parties.''

To obviate the defense interposed by sureties that they executed a bond conditionally—that is, that it should not become binding upon them until other sureties had actually signed, the General Assembly of this state provided by § 8296 of Crawford & Moses' Digest that: ''It shall not be a defense in favor of any surety on any bond or obligation that he became surety thereon on condition that the principal obligor should procure the co-suretyship of other persons before the said instrument should be delivered, and this shall be the case whether the names of said contemplated co-sureties appear upon the face of said instrument at the time said condition is stated, or are specified in an independent agreement or understanding; but, in case of every such failure to procure the joinder of the said contemplated co-sureties, the liability of the sureties who actually sign said bond or other obligation shall be as complete and valid as if no such condition had been mentioned, and the instrument to which their names are signed shall be deemed and taken to all intents and purposes as their obligation.''

The case of *Jones* v. *Hadfield,* 192 Ark. 224, 96 S. W. (2d) 959, was an action against a former city treasurer of Little Rock and his sureties for money belonging to firemen's pension fund, lost in a bank failure. Suit was brought against Hadfield and the surety on his bond, Fidelity & Deposit Company of Maryland. The opinion, in part, says: ''The bond executed by Hadfield, the city treasurer, had all of the usual incidents and provisions of the statutory bond. In fact, it was such, but to it was added the following provision: 'It is mutually understood and agreed between all parties hereto, that the said surety shall not be liable to said city of Little Rock, Arkansas, for any loss resulting to said city of Little Rock by reason of any public moneys being now on general or special deposit or hereafter placed on general or special deposit by or on behalf of the said principal with any bank, depository or depositories, or by reason of the allowance or acceptance

by said principal of any interest thereon, any law, decision or statute of the state of Arkansas or ordinance of the said city of Little Rock, Arkansas, to the contrary notwithstanding.' ''

By a divided court it was held that the surety was bound, the gist of the opinion being that ''Officers who must make bonds do so because required by law. They and their sureties have as much right to ignore the law as they have to waive its salient and salutory provisions —no more. Bonds made by officers are statutory bonds. Into them the statute is written; in other words, all of the conditions and stipulations are statutory. Whatever else may be added, by way of limitation or impairment, must be deemed surplusage.''

We are of the opinion that John Wood is estopped to deny validity of the bond he failed to sign, but which he filed, bearing the genuine signatures of Byars and Hamer. It is an official bond, and under it the constable assumed the duties of office, and continued to function. In depositing this bond with the proper authorities he adopted it, and its terms were as effective and binding as though he had written his name on the document. Since it was the purpose of the sureties to become such on the official bond of the constable, they will not be heard to deny its genuineness or to plead its technical deficiencies.

The judgment is reversed, with directions to overrule the demurrers.