DAVIDSON, SHERIFF, *v*. CHANDLER.

4-7164                                           175 S. W. 2d 567

Opinion delivered November 22, 1943.

*O. E. Williams* and *S. Hubert Mayes,* for appellant.

*G. T. Sullins* and *Rex W. Perkins,* for appellee.

McHANEY, J. Appellants are the sheriff of Washington county and the surety on his official bond. Appellees are the widow and minor children of N. A. Chandler, deceased, and they brought this action against appellants to recover damages for the alleged negligent shooting and killing of N. A. Chandler by Joe C. Burton, deputy sheriff under appointment of appellant, Davidson, it being alleged that the shooting and killing by Burton was done carelessly, negligently and under color of his office. Appellants defended this action on the ground that Burton did not act officially in killing Chandler, and hence there was no liability on Davidson or his bond.

Burton was charged by information with murder in the first degree for the killing of Chandler, was tried and convicted of voluntary manslaughter and sentenced to four years in the penitentiary. His case was affirmed on appeal to this court on June 22, 1942. *Burton* v. *State,* 204 Ark. 548, 163 S. W. 2d 160.

Trial resulted in a verdict and judgment against appellants in the sum of $10,000, from which is this appeal.

The facts, briefly stated, are that on the morning of November 3, 1941, Burton was driving his car from the county jail to the municipal court, with two men in his car and in his custody who were to enter pleas of guilty to some minor offense. As he drove along the square in the city of Fayetteville, his car collided with one driven by an elderly man by the name of Overholt. This collision, while causing small damage to Burton's car, evidently angered him very much and, as a result, he proceeded to beat Overholt rather brutally. All of this was observed by N. A. Chandler, his father and others in their nearby upstairs real estate office. The Chandlers, father and son, left their office and proceeded to the scene of the affray with the purpose of interceding

and stopping the unseemly, if not cowardly, attack Burton was making on Overholt. N. A. Chandler and Burton then engaged in some not very polite conversation and blows were passed or attempted, when Chandler retreated and Burton drew his pistol, fired and killed Chandler. On this state of facts it is sought to hold the sheriff and his surety responsible in damages to his widow and minor children. Appellants demurred to the complaint, and, at the conclusion of the evidence offered by appellees, they requested a directed verdict in their favor. Both were overruled.

Appellants rely principally on the refusal of the court to direct a verdict for them to reverse the judgment. Other assignments are argued, but since we agree that the court erred in submitting the case to the jury, other assignments will not be considered.

Section 11814 of Pope's Digest provides that each sheriff may appoint one or more deputies for whose official conduct he shall be responsible. Such has been the statute since December 11, 1852, and was merely declaratory of the common law. *Edgin* v. *Talley,* 169 Ark. 662, 276 S. W. 591, 42 A. L. R. 1194. In *Usrey* v. *Yarnell,* 181 Ark. 804, 27 S. W. 2d 988, we quoted the general rule announced in *Edgin* v. *Talley* and recognized but not stated by Judge MANSFIELD in *Thomas* v. *Kinkead,* 55 Ark. 502, 18 S. W. 854, 15 L. R. A. 558, 29 Am. St. Rep. 68, as follows: "The general rule is that for all civil purposes the acts of a deputy sheriff or constable are those of his principal. Hence, a sheriff or constable is liable for the act, default, tort, or other misconduct done or committed by his deputy *colore officii.*"

The question presented is, whether Burton was acting officially, that is under color of his office, in assaulting Overholt or in shooting and killing Chandler, or was he simply engaged in a private fight with them to punish a real or an imaginary personal grievance against them —the one for backing into his car, and the other, for presuming to interfere to stop a brutal assault on an old man. In neither case was he acting officially as deputy

sheriff. He did not seek to arrest either of them, with or without a warrant, was serving no kind of process on either of them. He simply constituted himself the court and jury, tried, convicted them and proceeded to execute the sentence—corporal punishment to one and death to the other. It is argued that he was on official business at the time, in that he was conveying two misdemeanants to court. This is true, and had he proceeded to try, convict and execute sentence on them, there would be foundation for a claim by them against the sheriff and his bond.

In *Usrey* v. *Yarnell, supra,* it was held that "a sheriff is not liable for damages resulting from his deputy's negligence in operating an automobile while proceeding to a place where he expected to arrest escaped prisoners." Although he was armed with process to arrest escaped prisoners and was driving over the most direct route, it was said, "He was not engaged in any official conduct at the time he collided with plaintiff's automobile."

*Whitlock* v. *Wood,* 193 Ark. 695, 101 S. W. 2d 950, 110 A. L. R. 955, our latest case on the subject, cited by both parties, is not in point here, as there the deputy constable, John Wood, Jr., raided a gambling game of some kind and was attempting to arrest all those present. Roy Whitlock, a minor, was present, started walking away and failed to halt when commanded by Wood to do so. Wood shot and seriously injured him, and, through his father, he sued the constable and the deputy, and the sureties on his official bond. The principal question decided there was the liability of the sureties on a bond not signed by the principal. But in so far as it recognized the liability of the constable and his sureties, it differs from the case at bar in that the deputy was attempting to make an arrest for an offense committed in his presence, while here no offense was being committed and no arrest attempted.

In an extensive note to *Alabama* v. *Jones,* 1 A. L. R. 247, cited in *Usrey* v. *Yarnell, supra,* a number of cases

are cited showing that the liability of the sheriff or other officer is dependent on the official character of the act of his deputy. One of such cases is *Jones* v. *Van Bever*, 164 Ky. 80, 174 S. W. 795, L. R. A. 1915E, 172. The annotator there said "the court, from an examination of many authorities, reached the conclusion that to render the sheriff liable, the act of the deputy must be done by virtue of his office as deputy; that for the deputy's act to have that character it must be done in an attempt to serve or execute a writ or process, and as a means to that end, or in acting under a statute giving him the right to arrest without a warrant; and that when a deputy sheriff, although he assumes to act as such, commits a wrong under circumstances where the law does not impose a duty on him to act at all, the wrong is not a violation of any official duty, and the principal is not responsible." In the same case it was held that a deputy's unlawful act in arresting one without a warrant was not an official act for which the sheriff would be liable.

Here, Burton committed a wrong in acting where the law not only imposed no duty on him to act at all, but prohibited him from acting. He was a peace officer and his duty was to conserve the peace, and not to break or disturb it. It is undisputed that he was not attempting to arrest either Overholt or Chandler.

As stated above, a number of cases are annotated following the Alabama case above cited in 1 A. L. R., beginning on page 247, and those interested may pursue the subject further.

Our conclusion is that the act of Burton in killing Chandler was not done under color of his office on the facts here presented, and that Sheriff Davidson and his surety are not liable therefor. Burton was not a defendant in this action, and whether his bond to the sheriff may be liable for his tort is not before us.

The judgment is accordingly reversed, and the cause remanded.

GRIFFIN SMITH, C.J., (dissenting). I think the judgment should be affirmed. The majority holding is that

Burton, when he assaulted Overholt, and later, when he killed Chandler, had so far departed from an official status as to relieve the sheriff of responsibility. It is my view that Burton, while fully clothed with authority of office, went as far afield in the use of official instrumentalities as it was possible for one to go, leaving death and the evidences of brutality to show for wantonness and moral perversity. He should not be permitted to assume the characteristics of a chamelion and change color to correspond with the background affecting a particular transaction.

When he left the sheriff's presence that official had sanctioned certain conduct and had directed consummation of an express duty. The conduct sanctioned was that of carrying a pistol. The duty enjoined was to deliver men to municipal court where they were to enter pleas of guilty. In other words, while in the process of conveying his prisoners, and while guarding them, he either collided with Overholt's car, or Overholt collided with his, and to impress all and sundry with the importance of *place,* Burton engaged in vituperation and profanity, insisting, at least inferentially, that Overholt's action had impeded progress of one charged with the immediate duty of delivering prisoners. So venomous was his course in castigating an old man that Chandler told him the outrage had proceeded far enough. Then, with but slight additional provocation and seemingly without a shadow of justification, he resorted to use of the deadly weapon provided by the sheriff, or, if not provided, carried with approval.

I do not mean to imply that the sheriff suspected Burton would deport himself in the manner complained of; nor would anyone competent to be elected sheriff condone what was done. I unhesitatingly join with the majority in the view that the record does not disclose affirmative conduct by the sheriff suggesting that he would have dispatched Burton on the mission if the result of the journey could have been known in advance. The thought I would impress is that in the circumstances of this case Burton utilized his official position and the instrumentalities with which he was supplied to protect

his mission and to vindicate a claimed right to proceed from jail to court without interference by Overholt or Chandler. The claimed transition from Deputy to independent agency was too instantaneous to justify this Court in saying that a conclusive legal presumption interposes to prevent consideration of obvious facts.

If the judgment is to be reversed the cause should be dismissed. The prevailing opinion expressly finds that on the facts presented Burton was not acting under color of office. There is nothing to indicate that the case was not fully developed; hence we are supposed to have all available evidence.

Mr. Justice ROBINS and Mr. Justice McFADDIN join in this dissent.