STATE for Use of HOLMES *v.* POPE, et al.

Division A. Nov. 5, 1951.

No. 38074 (54 So. (2d) 658)

Wm. V. Murry and E. J. Currie, for appellant.

448

**Roy J. Goss, Henry Mounger** and **Walter S. Bullock,** for appellees.

**McGehee, C. J.**

This is a suit for damages on behalf of the appellant H. L. Holmes, Jr., against Jackie Pope and Shella Riley, police officers of the City of Columbia, and the sureties on their official bonds. ■ ■ The appellant contends that on the morning of May 15, 1950, at about 3 o'clock he was driving his automobile on the public highway several miles west of the city of Columbia in a cautious manner and at a lawful rate of speed when the two principal defendants fired upon him without warning while in pursuit of him, and at a time when he did not know who they were or that they were officers of the law; and that he sustained property damage and personal injuries to the extent hereinafter mentioned, it being alleged that the damage to his property and to his person was the proximate result of the officers shooting at him and his car and causing him to sustain some bruises on his head when they deflated his rear tires causing him to lose control of the car on the highway.

The plaintiff testified in support of the above contention, and also claimed that he sustained additional damages on account of the officers arresting and taking him to jail and leaving his car unguarded during the night on the shoulder of the highway when his spare tire, mechanical tools and fishing tackle were stolen therefrom. He explained that at the time of his arrest he was on his way to pick up a companion for a fishing trip which they had planned for that day.

The defendants Pope and Riley testified that while on duty they first saw the plaintiff driving at about 40

miles per hour along Main Street in front of the police station in the city of Columbia, where they were seated in a police car; that shortly thereafter he passed along the street again, driving at about 50 miles per hour, and turned into an alley near the courthouse square with his car making a screaming noise; that he thereafter passed out of the alley and turned into another main thoroughfare almost overturning his car, and continued to drive in a reckless manner until he passed the corporate limits of the municipality, having in the meantime forced one motorist off the highway shortly before reaching that portion thereof outside the corporate limits; that these two defendants continued to pursue the plaintiff to prevent him from endangering his own life or the lives and property of others; that they were well acquainted with the plaintiff and that he was well acquainted with them, since they had arrested him on a charge of drunkenness about 10 days prior thereto and he had plead guilty to this charge; that when he drove out of the alley in question and came near overturning his car, these officers were at a distance of about 75 feet away, blowing the siren of the police car, throwing on the red blinker lights, trying to get the plaintiff to stop and submit to arrest for the misdemeanor thus committed in their presence and that he ignored their signal and warning; that after the defendants had pursued the plaintiff beyond the corporate limits they continued to blow the siren and flash the red lights of the police car in an effort to pass the plaintiff's car for the purpose of placing him under arrest; that while this was transpiring the plaintiff would weave from one side of the road to the other in such manner as to render it unsafe for the police car to pass him; and that they therefore used only such means as reasonably appeared to them to be necessary in order to effect an arrest by shooting low and carefully so as to deflate his tires.

The officers further testified that they did not shoot at the plaintiff at all and that they did not shoot at his

car or hit his car except in puncturing the rear tires thereof; that after arresting the plaintiff for having committed the misdemeanor of reckless driving in their presence, the defendants looked in the trunk and glove compartment and other portions of the car to remove anything of value before leaving the car off the highway unattended, and that they found no fishing tackle or anything else that they thought anyone would want and that when they placed the plaintiff in their car to take him to jail he did not request that they remove anything from the car before leaving it there on the shoulder of the highway for the night.

The proof was also conflicting as to whether or not any of the shots fired by the defendants struck the bumper of the plaintiff's car in such manner as to cause one of the bullets to whiz by his head, or whether or not any bullet struck the car except in the rear tires. In other words, there was a clear issue for the jury on the facts testified to by the plaintiff and the defendants respectively.

Section 8175, Code of 1942, provides that ''Any person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving.'' Section 2470, Code 1942, provides that an officer or private person may arrest any person without a warrant for any indictable offense of a breach of the peace committed or attempted in his presence. A violation of Section 8175, supra, is made a violation of the laws of the municipality by a city ordinance. Moreover, Section 2477, Code 1942, as amended by Chapter 434, Laws 1948, provides in substance that if a person commit an offense within the corporate limits of an incorporated municipality and be pursued by a municipal peace officer or police officer and shall escape from the municipality, such officer may pursue and apprehend such offender to places without the corporate limits of the municipality. In the instant case the officers pursued the plaintiff for a distance of

4 or 5 miles before they were able to stop him in their chase of his car.

In the case of State to Use of Johnston et al. v. Cunningham et al., 107 Miss. 140, 65 So. 115, 118, where the court held that a sheriff and the sureties on his official bond are liable in a civil action for damages arising from his intentional or negligent shooting of a misdemeanant who flees to avoid arrest, it was said: ''The evidence discloses that there is a custom among officers to fire their pistols when pursuing fugitives, even where they are misdemeanants, as a ruse to prevent their further flight. We unqualifiedly condemn this practice of the reckless use of firearms. Officers should make all reasonable efforts to apprehend criminals; but this duty does not justify the use of firearms, except in the cases authorized by law. Officers, as well as other persons, should have a true appreciation of the value of a human life.'' In that case the officer shot and killed a hunchback 20 years old at a time when he was fleeing from the officer through the woods after having engaged in a fight or disturbance of the peace. He had run a distance of 100 to 150 yards when the sheriff drew his pistol and fired. The boy fell instantly, shot in the head, and died in a short time. While pursuing the boy the sheriff called to him, ''Stop, or I will shoot you!'', and the youth replied, ''Shoot, damn you!'' One witness testified the sheriff shot just as the boy made his reply. The sheriff testified that he told the boy several times to stop or he would shoot, and that the boy made the reply above quoted.

At the trial of the Johnston case the defense was interposed that the sheriff shot a twig or limb and that the bullet glanced and struck the boy, thereby meaning that he did not shoot him intentionally, but the court said in the opinion, ''The explanation of counsel for appellee that the ball fired up and to the right struck a twig glancingly which diverted it to the left, where it struck another twig and then, glancing downward, went

into Johnston's head, is not in keeping with the reasonable and ordinary view of the matter. We must bear in mind that the sheriff was shooting with a modern pistol of high power, the ball from which would have easily gone through any twig of average size; and we should also keep in mind that the wound did not show that the ball was in any manner affected by having struck an object glancingly. On the other hand, a round bullet hole is shown.''

In the case at bar the officers were likewise armed with high powered pistols, and if the jury had believed from a preponderance of the evidence that they were firing either at the plaintiff or his car generally and a bullet had either struck the plaintiff, or had struck the car and glanced and hit him, the officer firing the shot would have been guilty of culpable negligence. They would have also been liable for any damage done the car by shooting in that manner, but the jury in the instant case adopted the version of the officers when testifying that they did not shoot either at the plaintiff or at the car generally, but that they aimed the firearm at the rear tires and punctured each of them, and without any intention of injuring either the plaintiff or his automobile except that they shot at a particular place on the car with the view of damaging it only to the extent necessary to bring it to a stop so that they could effect the lawful arrest of the plaintiff.

In 4 Am. Jur. 139, Sec. 20, it is said that ''The firing of shots to effect the arrest of a lawbreaker with no intention of injuring him, is not an assault and battery where they do not hit him or cause him physical injury''. Of course it is unnecessary that an assault and battery be committed on a plaintiff in order to render a defendant liable for any property damages that may be caused by using more force than would be reasonably necessary to effect his arrest.

In affirming the judgment rendered on the verdict of the jury in the instant case, based upon what we deem

to have been proper instructions as to the law, we do so because of the facts of this particular case, and not as condoning any reckless or wilful use of firearms in arresting a misdemeanant under different facts and circumstances. We have no former decision of this Court which has dealt with the precise question here involved, but we are of the opinion that the case of Edgin v. Talley, 169 Ark. 662, 276 S. W. 591, 42 A. L. R. 1194, and the cases therein cited, are ample precedents to sustain the judgment appealed from in the instant case.

Therefore, the judgment of the trial court must be affirmed.

Affirmed.