110 So.2d 442 (1959)
C.W. HUTCHINSON, Appellant,
v.
Willie LOTT, Appellee.
No. A-452.
District Court of Appeal of Florida. First District.
April 7, 1959.
Rehearing Denied April 21, 1959.
*443 Richard W. Ervin, Atty. Gen., and T. Paine Kelly, Asst. Atty. Gen., for appellant.
Edward L. Bush, Palatka, for appellee.
STURGIS, Chief Judge.
This is a suit for damages based on a civil action of assault. The complaint alleged that the defendant "unlawfully, maliciously and feloniously assaulted the plaintiff" by aiming a pistol at him and "thereby causing the plaintiff to be in fear of bodily harm and life." There was no allegation of property damage and none proved.
The defendant was a Wildlife Officer with the State Game and Fresh Water Fish Commission in Putnam County, Florida. Upon being informed that some persons were engaged in "monkey fishing"[1] on a nearby river, the defendant set out in his boat in an attempt to find the offenders. Shortly he recognized the plaintiff and another man engaged in the unlawful activity. The defendant was in his official uniform and was operating a patrol boat to which was attached a blinking red light. The plaintiff admitted that within 500 yards of his position he recognized the defendant whom he knew as a Wildlife Officer, but failed to yield to his commands to stop. The officer got close enough to grab onto the plaintiff's boat but in doing so he slightly crushed his hand which gave the plaintiff and his companion an opportunity to steer their boat away from him. As they drove away the defendant officer fired a shot at their motor, according to him "at close range but beyond the point of any danger of the bullets richocheting or hitting anybody. * * *" The plaintiff and his companion successfully fled from the officer, who returned to shore and swore out an affidavit for his arrest. The plaintiff was subsequently found not guilty of the charge.
The defendant was familiar with the type of motor on the plaintiff's boat and it was admitted by both parties that the officer was not shooting at the plaintiff but was aiming at the ignition on the motor. However, the plaintiff testified that he was afraid that the defendant would shoot him "if it got to that." One of his foremost fears was that he would be arrested and have his fishing equipment confiscated. The plaintiff apparently was unaffected physically by the incident except for being *444 "shaky" for a day. The plaintiff admitted that he had been arrested four times for monkey fishing, "one time by the present defendant," and had pled guilty to two of the charges.
The defendant testified that he did not bear any malice toward the two men in attempting to apprehend them and that his sole purpose was to bring them to justice because they had violated the law in his presence.
On the basis of this evidence a verdict of $115 compensatory damages and $5,000 punitive damages was returned. A motion for new trial was denied and this appeal subsequently followed. The question to be determined is, was there sufficient proof of actual damages to sustain that award, and if so, was the jury authorized on the basis of the evidence to inflict punitive damages?
The defendant was attempting to arrest the plaintiff for a violation of the laws under the supervision of the Game and Fresh Water Fish Commission, committed in his presence. The Commission and its duly authorized agents have the power to arrest upon probable cause without a warrant any person found violating any of the game and fresh water fish conservation laws, rules, or regulations. F.S. § 372.07, F.S.A. All such conservation officers are constituted police officers with the power to make arrests for violation of the laws of this state and the rules and regulations of the board of conservation under their jurisdiction. F.S. § 370.02(7), F.S.A.
In Florida a police officer may arrest without a warrant when there is a misdemeanor being committed in his presence. F.S. § 901.15, F.S.A. Under such circumstances he may use such force in arresting the misdemeanant as is necessary to effect his purpose and to a great extent he is the judge of the degree of force to be used. However, the jury in a civil action of this nature is the final arbiter of the amount of force which could properly be used under the particular circumstances. The measure of necessary force is generally considered to be that which an ordinary prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances. Dixon v. State, 101 Fla. 840, 132 So. 684.
It is generally conceded that an officer in attempting to arrest a person charged with a misdemeanor is not justified in shooting or killing him either to effect the arrest or to stop his flight unless the misdemeanant forcibly resists arrest to the point that the officer must act in self-defense. Edgin v. Talley, 169 Ark. 662, 276 S.W. 591, 42 A.L.R. 1194; State v. Dunning, 177 N.C. 559, 98 S.E. 530, 3 A.L.R. 1166, 1170.
We have no Florida precedent dealing with the precise question of the use of firearms as an aid in effecting the arrest under the circumstances where, as in the case on review, the arresting officer has made no attempt to shoot the lawbreaker and the shots fired do not kill or injure him. However, a review of decisions from other jurisdictions leads us to the conclusion that the accepted rule is that when a misdemeanant flees to avoid arrest an officer is justified in firing shots to effect the arrest as long as he has no intention of shooting the lawbreaker. This rule recognizes as proper the action of officers in discharging firearms into the air as a ruse to prevent further flight and in disabling the vehicle in which the lawbreaker is fleeing so as to bring it to a stop and effect the arrest. See Edgin v. Talley, supra; Brown v. State, Miss., 87 So.2d 84; State, for Use of Holmes v. Pope, 212 Miss. 446, 54 So.2d 658, 660; 4 Am.Jur. 139, Sec. 20. As was said in the Pope case:
"They [police officers] would have also been liable for any damage done the car by shooting in that manner, but the jury in the instant case adopted the version of the officers when testifying that they did not shoot either at *445 the plaintiff or at the car generally, but that they aimed the fire arm at the rear tires and punctured each of them, and without any intention of injuring either the plaintiff or his automobile except that they shot at a particular place on the car with the view of damaging it only to the extent necessary to bring it to a stop so that they could effect the lawful arrest of the plaintiff."
We do not in any sense condone the reckless use of firearms to apprehend misdemeanants. Officers should make all reasonable efforts to apprehend criminals without resort to shooting whenever possible. Our jealous protection of the individual should not, however, serve as an escape valve for those who thwart the law. In this case there is no legal justification or excuse shown for plaintiff's refusal to submit to arrest, least of all his fear that his fishing equipment might be confiscated.
There is no substantial evidence of an unwarranted use of force on the part of the defendant officer in the use of his firearm to deter the plaintiff's flight, and that in itself does not constitute an assault. One cannot with impunity resist lawful arrest and then recover damages for the fears engendered in his mind by what he conceives might be a consequence of the arrest. There being no competent proof to sustain the verdict, the judgment must be reversed on that score alone.
We deem it appropriate to discuss another phase of the verdict and judgment, that is, the question of the propriety of the punitive damage award. The rule in this state is that in all actions for tort the jury may be authorized to inflict exemplary damages where: (1) some actual damage is shown (McLain v. Pensacola Coach Corp., 152 Fla. 876, 13 So.2d 221), and (2) some malice, moral turpitude, wantonness or outrageousness accompanies the wrong committed (Dr. P. Phillips & Sons, Inc., v. Kilgore, 152 Fla. 578, 12 So.2d 465; Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757). While we do not follow the rule established in some jurisdictions to the effect that punitive damages must be "in proportion" to the compensatory damages, in McLain v. Pensacola Coach Corp., supra, it was held that punitive damages are not recoverable unless actual damages are shown. The relation of punitive damages to actual damages cannot be reduced to a mathematical certainty and is dependent upon the facts of each case. Punitive damages are awarded as a punishment to a defendant and as a warning to deter him from committing a similar offense in the future. Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Florida, Inc., Fla.App., 106 So.2d 233; Ross v. Gore, Fla., 48 So.2d 412. Accordingly, they must bear some relation to the amount that the defendant is able to pay since the pecuniary punishment to a man of large means would not be the same as to a man of small means. Maiborne v. Kuntz, Fla., 56 So.2d 720; Jones v. Greeley, 25 Fla. 629, 6 So. 448.
From our review of the record we find that assuming there had been a proper basis for actual damages as the jury sought to impose, the punitive damages sought to be imposed bear no reasonable relation thereto and are so great as to shock the judicial conscience and to indicate that the jury was influenced unduly by passion or prejudice, or labored under a misconception of the law. In light of the fact that the plaintiff had previously been arrested for the same crime, that he knew the defendant and knew him to be a duly authorized officer, and that he acknowledged that the defendant was not shooting at him, there is lacking that degree of maliciousness and outrageous disregard for plaintiff's rights that is requisite to sustain such a substantial verdict.
While there is no evidence bearing on the economic status of the defendant, we take judicial notice that the salary of conservation officers is such that the verdict of $5,000 punitive damages *446 transcends the realm of punishment and results in economic castigation of the defendant. For that reason, also the cause is reversible.
Reversed.
CARROLL, DONALD K., and WIGGINTON, JJ., concur.
NOTES
[1] An illegal method of fishing whereby the fish are stunned to death by an electrical device.