226 So.2d 684 (1969)
ATLAS PROPERTIES, INC., a Florida Corporation, Petitioner,
v.
John V. DIDICH, As Administrator of the Estate of Kay Didich, a Minor, Deceased, Respondent.
No. 37818.
Supreme Court of Florida.
September 17, 1969.
*685 Reginald L. Williams, of Dixon, Bradford, Williams, McKay & Kimbrell, Miami, for petitioner.
Edward L. Magill, of Stephens, Demos, Magill & Thornton, Miami, for respondent.
THORNAL, Justice.
By petition for certiorari we have for review a decision of a district court of appeal in the case of Atlas Properties, Inc. v. Didich, 213 So.2d 278 (3d Dist.Ct.App. Fla. 1968).
This Court has jurisdiction to review the District Court's opinion because the latter certified to this Court that said opinion "`passes upon a question of great public interest', in that it determines the right to punitive damages in an action based upon the survival of actions pursuant to Section 46.021, Fla. Stat., 1967 [F.S.A.]."
Petitioner further requests this Court to explore the entire record to see if the proper result has been reached in both the trial and District Courts. This Court has such power. Zirin v. Charles Pfizer, 128 So.2d 594, 596 (Fla. 1961).
On August 19, 1966, John V. Didich filed a complaint alleging that on March 30, 1966, his thirteen (13) year old daughter, Kay, was drowned when her arm was caught in an uncovered filter drain pipe at the bottom of a swimming pool located at an apartment house owned and operated by the defendant, Atlas Properties, Inc., Mr. Didich sued Atlas Properties, in two capacities: (1), as a parent under Fla. Stat. § 768.03 (1965), F.S.A., seeking compensatory damages for the wrongful death of his minor daughter; and, (2), as the administrator of Kay's estate under Fla. Stat. § 45.11 (1965) [now Fla. Stat. § 46.021 (1967), F.S. A], seeking recovery of the compensatory AND punitive damages which Kay would have been able to seek in her own name if she had lived. After the trial, the jury returned the following verdict for the plaintiff: (1), $20,000.00 compensatory damages for wrongful death; and, (2), $20,000.00 compensatory and $35,000.00 punitive damages under Florida's survival of actions statute.
On appeal, the defendant made basically four assignments of error which the Court of Appeal, Third District, answered in its opinion, Atlas Properties, Inc. v. Didich, supra. Appellant claimed: (1), the punitive damages award of $35,000.00 was so excessive as to constitute an unconstitutional taking of property; (2), punitive damages are not recoverable under Florida's survival act, Fla. Stat. § 45.11 (1965); (3), the evidence in the record was insufficient to sustain defendant's liability for punitive damages; and, (4), the two awards of $20,000.00 compensatory damages under the wrongful death and survival of actions statutes were *686 excessive. The District Court, speaking through Judge Pearson, determined each assignment of error against the defendant-appellant by affirming the trial court's judgment in its entirety.
Petitioner now raises four issues before this Court, as follows: (They were all before, and answered by, the District Court with one exception. The issue dealing with the compensatory damage awards has been dropped since petitioner has paid Mr. Didich both $20,000.00 awards.)
(1) Whether punitive damages are recoverable by the personal representative of the deceased injured party under Fla. Stat. § 45.11 (1965) [now § 46.021 (1967), F.S.A.], Florida's survival of actions statute.
(2) Whether punitive damages of $35,000.00 against Atlas Properties, Inc. are excessive and, thus, a cruel and unusual punishment and an unconstitutional confiscation of property.
(3) Whether the act of permitting the swimming pool to be used without providing a securely-fixed drain pipe cover therein showed a sufficient degree of malice, moral turpitude, wantonness, or outrageousness in law to warrant the jury imposing punitive damages against the defendant.
(4) Whether the safety rules promulgated by the State Board of Health relating to swimming pools exceed its legislative grant of power and, thus, are invalid and unconstitutional. (This issue is raised for the first time here.)
It is petitioner's position that Florida case law and the history behind § 45.11 indicate that punitive damages do not survive the death of the injured party. To reach a satisfactory determination of the question Florida's survival of actions law should be chronologically considered from its inception in our jurisdiction together with applicable law from other jurisdictions.
Statute originally passed by Legislature in 1828 read:
"All actions for personal injuries shall die with the person, to wit: Assault and battery, slander, false imprisonment, and malicious prosecution; all other actions shall and may be maintained in the name of the representatives of the deceased." (§ 4211 of Comp.Gen.Laws; § 2571 of Rev.Gen.St.)
Jacksonville Street Railway Co. v. Chappel, 22 Fla. 616, 1 So. 10 (1886), and Jones, Arnum & Co. v. Townsend, 23 Fla. 355, 2 So. 612 (1887):
Both held this 1828 statute does not change the old English Common Law on survival of actions.
Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931):
Here, this Court reinterpreted Florida's original (1828) survival of actions statute. It held for the first time that a survival action for "purely compensatory damages" survives the death of the tortfeasor. Id. at 789. Justice Davis explained that Florida did not adopt the English common law declaring all actions terminated with the tortfeasor's death since they were based on vengeance rather than compensation. Id. at 785. Thus, Florida's survival statute was in derogation of the English common law since its policy was based on compensation to the injured party for the injury done to him. English common law treated the tortfeasor like a criminal. Nothing concerning the survival of punitive damages was contemplated.
Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631, 94 A.L.R. 376 (1933):
This case cited by petitioner is not on point as it deals solely with Florida's wrongful death statute. It held that punitive damages are not recoverable in such an action, but never mentioned a survival action statute. This case also repeated the English common law principle "that an action for personal injuries dies with the injured party." Id. at 635. *687 State ex rel. H.E. Wolfe Const. Co. v. Parks, 129 Fla. 50, 175 So. 786 (1937):
In interpreting the 1828 survival act, this Court said that the list of crimes mentioned at the beginning of the statute die with the injured party or the tortfeasor, but the remaining personal injury actions survive either parties' death so that purely compensatory damages can be recovered. Again, nothing is mentioned concerning punitive damages.
Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213 (1945):
Again, this Court, under the 1828 act, held that purely compensatory damages survive. Id. at 220. On rehearing, Justice Sebring stated that the plaintiff's cause of action was predicated on the survival statute, but he incorrectly was seeking wrongful death damages.
Survival Statute was amended in 1951 to read as it did in 1965:
"No action for personal injuries and no other action shall die with the person, and all actions shall survive and may be instituted, maintained, prosecuted and defended in the name of the personal representative of the deceased, or in the name of such other person as may be provided by law." (Gen.Laws Ch. 26541, 1951.) (Emphasis added.)
Ellis v. Brown, 77 So.2d 845 (Fla. 1955):
Justice Roberts speaking for the Court in this case, determined that an injured deceased's loss of wage earning capacity is recoverable by the beneficiaries under the wrongful death statute and not by the personal representative under the survival statute. Therefore, the case is not really on point. However, the Court's opinion does give a brief history of § 45.11 on page 847. Nothing on punitive damages is discussed. However, it is stated that the common law should be followed unless expressly changed by statute.
Fowlkes v. Sinnamon, 97 So.2d 626 (3d Dist.Ct.App.Fla. 1957), cert. denied 101 So.2d 375 (Fla. 1958):
The 3d District Court of Appeal foreshadowed the instant decision in controversy by stating:
"Assuming, but not deciding, that punitive as well as compensatory damages are available under the Survival Statute, the trial court was in error in authorizing the verdict for punitive damages." Id. at 628. (Emphasis added.)
The "error" was to the effect that no punitive damages should be allowed because no compensatory damages were first given. Leahy v. Morgan, 275 F. Supp. 424 (E.D. Iowa 1967):
This case dealt squarely with the question of punitive damages under an Iowa survival statute which is very similar to Florida's:
"All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Stat. §§ 611.20  611.22 (1966).
This Federal District Court stated its reasoning for allowing punitive damages to survive and it was used by the 3d District Court of Appeal in the instant decision. The reasoning was stated:
"Thus, it seems apparent that §§ 611.20  .22 is a true survival act, one which is intended to preserve those causes of action which existed at the time of the injured party's death. The public policy underlying exemplary damages is to publish the wrongdoer. Logic dictates that if a wrongdoer may be punished if his victim lives, then surely he should not escape retribution if his wrongful act causes a death." Id. at 425. (Emphasis added)
The only question concerning this opinion is that it indicates it is interpreting the law of Iowa from previous decisions of that State. It relies heavily on Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509 (1956). *688 However, Fitzgerald, while it does have broad language in it, does not deal with the survival of punitive damages. It merely allows recovery for the deceased's mental pain and suffering. Thus, perhaps Leahy does not recite Iowa law accurately. Still, the paragraph cited above makes good sense. It puts to rest the old saying that it is better to kill your victim than to maim him.
Connolly v. Palm Aire Country Club, 26 Fla. Supp. 17 (Broward County Cir. Ct. 1965):
This is really the only case exactly on point. It holds punitive damages recoverable under § 45.11.
§ 45.11 was amended in 1967 to § 46.021, and it now reads:
"No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted and defended in the name of the person prescribed by law." (Gen Laws Ch. 67-254, 1967.)
Thus, with the history of Florida's survival statute before us, what can we conclude? First of all, it appears from the wording of the statute passed originally in 1828 and amended in 1951 and 1967 that though the words have been changed within the statute, their meaning really has remained quite consistent even though this Court has seen fit to find otherwise. The 1828 statute from its clear language singled out several torts which would not survive, and the general language at the end of the statute indicated that all other causes of action would survive. However, from 1828 to 1931 (Waller v. First Savings & Trust Co., supra), this Court interpreted said survival act to be merely a restatement of the old English common law that a cause of action does not survive the death of either party. Jacksonville Street Railway Co. v. Chappell, supra. Then in the early 1930's it became obvious to this Court that such an interpretation of § 45.11 was incorrect and that "purely" compensatory damages could be recovered after the death of either party. State ex rel. H.E. Wolfe Const. Co. v. Parks, supra. However, there have been no cases specifically on point dealing with punitive damages surviving the death of either party, or at least the death of the injured party. The instant case before this Court is the initial construction of § 45.11 dealing with the survival of punitive damages.
The case precedents on this question may seem to rule out such recovery, but actually they do not do so. The word "purely" was a bad choice in Waller v. First Savings & Trust Co., supra. That case dealt only with compenatory damages and does not undertake to limit recovery only to compensatory damages. "Purely" could also have meant that the personal representative could not sue under § 45.11 and recover those damages which the beneficiaries could recover under Florida's wrongful death statutes, Fla. Stat. §§ 768.01-768.03 (1965), F.S.A. This is better reasoning for it is doubtful that the recovery of punitive damages was even considered until very recently, i.e. in the last decade. To allow recovery for compensatory damages in derogation of the common law was a big step; thus, seeking the survival of punitive damages was slow in coming.
It appears that logic and common sense indicate that this Court should now affirm the District Court and allow the recovery of punitive damages under § 45.11. This appears to be true regardless of whether it is the tortfeasor or the injured party who dies. Certainly, this logic is more apposite when it is the injured party who dies (as we have here) rather than the actual tortfeasor. It is difficult to accept reasoning that envisions a person can be punished only for his malicious and reckless actions when they maim another but not for these same despicable actions when they kill the victim. Leahy v. Morgan, supra, properly explains why such a rule of law cannot be allowed to exist. This explains the public policy reasons for allowing Mr. Didich to recover in the instant case, but there is a far better and simpler reason for allowing *689 recovery. The clear language of § 45.11 [now § 46.021 (1967)], "No * * * action shall die with the person * * * ", indicates that any interpretation other than allowing recovery for punitive damages after the death of the injured party would be extremely difficult to justify. The statute speaks plainly on its face and really needs no interpretation. If a victim could have brought the action before his death, then his personal representative should be allowed to do so after his death. Thus, punitive damages should survive.
Although the Third District Court of Appeal did reach the proper conclusion by holding that punitive damages do survive the death of the injured party, it did so in an improper fashion. The District Court stated:
"The Supreme Court of Florida in Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780 (1931), held that while at English common law no tort action survived the death of the defendant, an action for compensatory damages for personal injuries would survive the death of defendant in 1931 because of the survival statute then in effect.
* * * * * *
"The Court reasoned that the English common law rule which would have barred the action never became part of Florida common law because at English common law a tort action was punitive rather than remedial, while the whole system of Florida law recognizes a tort action is remedial rather than punitive. Admittedly, if we follow this reasoning we must hold that under the 1965 survival statute * * * punitive damages do not survive the death of the injured party." Id., 213 So.2d at 280. (Emphasis added.)
The District Court then went on to find the contrary of what it "admittedly" found the law to be by looking at the statute's "clear legislative intent." While the District Court correctly explained the old English common law purpose for tort action (punitive rather than remedial), it incorrectly limited recovery under the 1828 statute and Florida's tort law to compensatory damages. All Waller v. First Savings & Trust Co., supra, and the other pre-1951 cases did was to allow recovery for compensatory damages after either the tortfeasor's or the injured party's death. It did not prohibit recovery of punitive damages because that question was never before the Court. Also, Florida has allowed an injured party to seek punitive damages in a tort action for some time. Our research discloses this is, in truth, a case of first impression and we so hold and allow respondent's action to recover punitive damages under § 45.11. The word "purely" used in those pre-1951 cases is at best unclear and most certainly obiter dictum which does not control as precedent for this Court to follow.
Petitioner's second argument is that even if punitive damages are allowed under § 45.11, with a financial statement showing a corporation net worth of only $5,630.56, the jury's verdict of $35,000.00 for punitive damages is going to bankrupt rather than merely hurt the corporation which is contrary to the law of Florida. Lehman v. Spencer Ladd's Inc., 182 So.2d 402 (Fla. 1965). Lehman does set forth the law of Florida on punitive damages:
"This procedure, with the allowance of evidence of financial worth of the tortfeasors, will make possible the attainment of the objective and purpose of punitive damages, if a defensible one remains, i.e. punishment of each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt." Id. at 404. (Emphasis added.)
Thus, Lehman sets down the general law on punitive damages awards, but, still, there is a need for a more specific guideline. This guideline is found in Hutchinson v. Lott, 110 So.2d 442 (1st Dist.Ct.App.Fla. 1959):

*690 "[T]he punitive damages sought to be imposed bear no reasonable relation thereto and are so great as to shock the judicial conscience and to indicate that the jury was influenced unduly by passion or prejudice, or labored under a misconception of the law." Id. at 445. (Emphasis added.)
In Hutchinson, the First District Court of appeal took judicial notice that a 1959 salary of a conservation officer was such that a verdict of $5,000.00 for punitive damages "transcends the realm of punishment and results in economic castigation of the defendant." Id. at 446. Thus, Hutchinson and Lehman give some indication of the broad test and the wide amount of discretion allowed in determining whether a punitive damage award is justified.
The Third District Court of Appeal determined below that "the jury was justified in believing the auditor's statement amounted to a mere bookkeeping entry." Id., 213 So.2d at 279. Judge Pearson went on to say that the balance sheet indicates the petitioner owns 59 rental apartment units which will create future revenue and $32.000.00 (at book value) of unimproved land which could have a greater earning power than is presently being achieved. The Court continued by stating that there is an equity of $100,000.00 in two apartment buildings which is not properly reflected on the balance sheet because depreciation has been subtracted. Furthermore, most of the corporation's liabilities are long-term with very little being currently owed. Another indication that the financial statement is not an exactly valid reflection of the corporation's net worth, and something the District Court failed to mention, is that approximately $50,000.00 of the long-term debt is owed to the company of Anthony and Bridy, Inc. Mr. Anthony is also the treasurer and a stockholder of Atlas Properties, Inc. This link-up certainly raises some doubts as to the validity of that debt. In fact, the only real indication on the financial statement that Atlas Properties, Inc. is not a much more prosperous corporation than is shown is that it has suffered annual losses since 1966. However, again it is difficult to determine how valid a barometer this fact is in determining the financial worth because officers and employees salaries are not stated.
We conclude, therefore, that petitioner's argument is not well-founded and Judge Pearson was correct in affirming the trial court on the $35,000.00 punitive damages award. From the testimony of Mr. Anthony it is clear that the jury could have reasonably disbelieved the financial statement as not being an accurate reflection of Atlas' net worth. Such balance sheets are usually filled with bookkeeping entries entered at cost instead of the actual fair market value of each asset. Petitioner's claim that it will go bankrupt by such an excessive award is without support in the record. In fact, there is no other financial evidence produced other than the financial statement and Mr. Anthony's revealing testimony. From the treasurer's testimony one can perceive an attempt to hide the real facts about Atlas' value because he is reluctant to produce the company's financial statements of prior years. Without a complete accounting for several years and without asset appraisals at fair market value, to assume that the instant award "shock[s] the judicial conscience" of this Court because it will bankrupt rather than merely hurt the tortfeasor would be mere, unfounded conjecture.
Having examined the record, we conclude there is no basis for disturbing the District Court's finding that there was sufficient evidence in the trial court record to support the jury's verdict that punitive damages should be awarded. Atlas Properties, Inc., v. Didich, supra 213 So.2d at 279 and 280.
Petitioner's last argument questions the admission of evidence at the trial showing that the defendant corporation was negligent when it violated the State Board of Health's rules on swimming pool maintenance. It believes such rules and regulations are invalid because the State Board of *691 Health exceeded the power granted to it by the Legislature in adopting said rules. If this be true, then the evidence admitted at the trial showing the rule violation which helped lead to an award of punitive damages was inadmissable and grounds for a new trial. However, petitioner raises this point for the first time in this Court. It was discussed in the trial court but was never alleged as error in the District Court. Because this new issue is not fundamental error it cannot be raised here for the first time. Hamilton v. State, 88 So.2d 606, 607 (Fla. 1956).
To conclude we find that this is a case of first impression in Florida and that the clear legislative intent on the face of Fla. Stat. § 45.11 (1965) [now § 46.021 (1967), F.S.A.], indicates that punitive damages were meant to survive the death of the injured party. Petitioner's other arguments are also without merit.
The certified question and the merits of the case are answered accordingly and the writ is discharged.
It is so ordered.
ROBERTS, Acting C.J., DREW and CALDWELL (Retired) JJ., and MASON, Circuit Judge, concur.