296 So.2d 498 (1974)
LAN-CHILE AIRLINES, INC., Etc., Appellant,
v.
Manuel RODRIGUEZ, Appellee.
LAN-CHILE AIRLINES, INC., etc., Appellant,
v.
Juan JANE, Appellee.
Nos. 73-1298, 73-1299.
District Court of Appeal of Florida, Third District.
June 25, 1974.
*499 Shalle Stephen Fine, Miami, for appellant.
Podhurst, Orseck & Parks, Preddy, Haddad, Kutner & Hardy, Miami, for appellees.
Before BARKDULL, C.J., and HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
This is a consolidated appeal from two adverse judgments entered upon jury verdicts in favor of the two appellees, Manuel Rodriguez and Juan Jane.
The appellees each were awarded $2,500 in compensatory damages and $110,000 in punitive damages as a result of a physical beating they received on January 5, 1971 by five assailants in the appellant's VIP room at the Miami International Airport.
The evidence elicited at the trial indicated that the assailants were hired by agents of Lan-Chile Airlines, Inc. to commit an assault and battery upon Rodriguez and Jane in order to discourage their activities on behalf of a labor union.
*500 In their main brief, the appellants have raised four points; and in the reply brief, a fifth point has been asserted challenging the excessiveness of the damages.
Appellant's first point on appeal presents a question as to whether or not the doctrine of sovereign immunity is a bar to recovery on the record of this case. Appellant argues that although it did not raise sovereign immunity as a defense in the pleadings, the appellees introduced the issue by comments during trial at voir dire of the jury, during opening and closing statements and by the testimony adduced during the proceeding.
Generally, it was shown during the trial that Lan-Chile Airlines was owned by the Chilean State and run as an independent business in the United States. In addition, there was testimony that one Osvaldo Moremans was designated by the Marxist Government in power in Chile at the time as a "super-boss" to oversee the airline's executives in this country.[1]
The first time sovereign immunity was directly raised as an issue before the trial court was by the appellant's motion for a new trial. In our view, the fact of state ownership which appears in the record does not signify that the legal issue of sovereign immunity was tried effectively by consent either expressly or impliedly. See Worth Insurance Co. v. Gammons, Fla.App. 1969, 228 So.2d 127; Langlois v. Oriole Land & Development Corp., Fla.App. 1973, 283 So.2d 143; RCP 1.190(b), 30 F.S.A.
In addition, we do not think that the doctrine of sovereign immunity operates as a bar to a cause of action arising out of a purely commercial operation by a foreign government in the United States. Harris & Company Advertising, Inc. v. Republic of Cuba, Fla.App. 1961, 127 So.2d 687.
Appellant next attacks certain admissions against interest made by the alleged assailants to the appellees which were introduced into evidence on the basis that their agency was established by extra judicial statements. This point is devoid of substantial merit.
The record demonstrates that the trial judge made a specific finding that a prima facie case of agency had been proven prior to permitting testimony regarding statements made by the assailants. We think that the record amply supports the finding. The fact of agency may be demonstrated by inference from facts and circumstances and the conduct of the parties involved in a particular case. 29 Am.Jur.2d Evidence § 663.
We also have carefully considered points III and IV of appellant's main brief in which it is urged that the trial court committed error by denying a new trial on the grounds of prejudicial testimony and prejudicial comment by counsel for the appellees. It is our conclusion upon review of the record that no reversible error has been shown by either point.
In our view, the testimony and the comments of counsel were not so prejudicial or inflammatory as to require the trial judge to grant a new trial. See Americana of Bal Harbour, Inc. v. Kiester, Fla. App. 1971, 245 So.2d 121; Lovell v. Henry, Fla.App. 1968, 212 So.2d 67; Bieley v. Jennings Construction Corporation, Fla.App. 1968, 212 So.2d 809, 811.
Lastly, the appellant has raised a new point in the reply brief. Actually, the point is new only insofar as this appeal is concerned. Before the trial court, this issue *501 was presented fully to the court upon the motion for new trial, and before that by a requested jury instruction. The court denied the motion for a new trial after counsel for both sides had presented the court with a memorandum of law on the issue of excessive punitive damages.
In between the time in which the appellant filed its main brief and its reply brief, this court decided Air Line Employees Ass'n Internat'l v. Turner, Fla.App. 1974, 291 So.2d 670. Therein, we stated the following:
"In awarding punitive damages it is for the jury to fix the amount therefor which would accomplish the purposes of such a punitive award against a defendant of a shown financial status. However, the fact that it is within the jury's province to fix the award should not operate to authorize the allowance as punitive damages of a sum which does not bear some reasonable relation to the compensatory damages awarded and which is excessively out of relation to the latter."
It is our view that the award of punitive damages in the instant case, which is 44 times the amount of the compensatory damages, is excessive, despite Lan-Chile Airlines' ability to pay the sum awarded.
In arriving at our determination, we emphasize that we have not overlooked well-established principles of law governing punitive damage awards. Such awards are intended as punishment and as a deterrent to others based upon the demonstrated degree of malice, moral turpitude, wantonness, wilfulness or reckless indifference to the rights of others. La Fleur v. Castlewood International Corp., Fla.App. 1974, 294 So.2d 21, filed March 26, 1974. Normally, an award of punitive damages rests within the sound discretion of the jury and will be set aside by the court only in unusual circumstances. Richards Company v. Harrison, Fla.App. 1972, 262 So.2d 258; Florida East Coast Railway Company v. Morgan, Fla.App. 1968, 213 So.2d 632; Hutchinson v. Lott, Fla.App. 1959, 110 So.2d 442.
Moreover, as indicated in the Hutchinson case, above cited, punitive damages need not be proportioned mathematically to the amount of actual damages awarded in any given case.
However, the court in Hutchinson held as follows:
"From our review of the record we find that assuming there has been a proper basis for actual damages as the jury sought to impose, the punitive damages sought to be imposed bear no reasonable relation thereto and are so great as to shock the judicial conscience and to indicate that the jury was influenced unduly by passion or prejudice, or labored under a misconception of the law." [Emphasis added.] See 110 So.2d at p. 445.
In sum, we do not think there is a precise formula whereby trial courts and appellate courts may measure the relationship of compensatory and punitive damages. But where a verdict is returned in which the punitive damages awarded are substantially greater than the actual damages given, we do not think the judicial conscience ought to roll over and play dead. So far as we know, no seismograph has been legally devised which will scientifically register the shock to the judicial conscience in any given case.
However, in a proper case, it is the duty of judges to carefully scrutinize the facts and circumstances presented to determine if the finder of fact has exceeded the bounds of sound discretion and reached a verdict which is unreasonable.
Therefore, for the reasons stated and upon the authorities cited and discussed, it is ordered as to each of the appellees, that unless he shall, within thirty days after the filing of our mandate, file in the circuit court a remittitur of $85,000 of the punitive damages (thereby making the amount *502 of the judgment in his favor to be for $2,500 compensatory damages plus $25,000 punitive damages) the judgment as to him will hereby be reversed with directions for a new trial on punitive damages. Upon the timely filing by an appellee of a remittitur as herein provided for, the judgment in his favor, as so reduced by such remittitur, shall stand affirmed.
It is so ordered.
NOTES
[1] The evidence introduced at trial indicated that it was Moremans, together with the new president of Lan-Chile Airlines who was in Chile, a Mr. Aliaga, who demonstrated open hostility towards the labor union activities conducted by the appellees. The evidence further strongly suggested that Moremans was the individual mainly responsible for hiring the assailants  allegedly from New York  to administer the assault upon the appellees.