325 So.2d 408 (1975)
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 675, Appellant,
v.
Earl Lowell LASSITTER, Appellee.
INTERNATIONAL UNION OF OPERATING ENGINEERS, Appellant,
v.
Earl Lowell LASSITTER, Appellee.
Dennis WALTON, Appellant,
v.
Earl Lowell LASSITTER, Appellee.
Nos. 72-566 to 72-568.
District Court of Appeal of Florida, Fourth District.
July 25, 1975.
Thomas J. Pilacek, Mamber, Gopman, Epstein & Foosaner, North Miami Beach, for appellant, International Union of Operating Engineers, Local No. 675.
Larry Klein, Cone, Wagner, Nugent, Johnson & McKeown, West Palm Beach, and Woll & Mayer, Washington, D.C., for appellant, International Union of Operating Engineers.
J. Leonard Fleet, Hollywood, for appellant, Dennis Walton.
Rex Conrad and Ronald Fitzgerald, Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
WALDEN, Chief Judge.

UPON SUPREME COURT MANDATE
Our initial opinion containing the facts, holdings and disposition is reported as International U. of Eng. Local No. 675 v. Lassitter, 295 So.2d 634 (4th DCA Fla. 1974). Thereafter, certiorari application was made to the Florida Supreme Court with these results:
1. June 5, 1975

*409 "The Cross-Petition for Writ of Certiorari filed in the above cases is hereby denied."
2. June 5, 1975
"On consideration of the Petition for Clarification and/or Rehearing filed by International Union of Operating Engineers, it is ordered that said petition is granted, and it is further ORDERED:
"This cause having heretofore been submitted to the Court on Petition for Writ of Certiorari, Cross-Petition for Writ of Certiorari, jurisdictional briefs and portions of the record deemed necessary to reflect jurisdiction under Florida Appellate Rule 4.5c(6), and it appearing to the Court that it is without jurisdiction, it is ordered that the Petition and Cross-Petition for Writ of Certiorari be and the same are hereby denied."
3. April 30, 1975
"Certiorari is granted and the decision of the Fourth District Court of Appeal is quashed on the basis of Rinaldi vs. Aaron, 314 So.2d 762 (Fla.) 1975."
4. June 5, 1975
"ON REHEARING GRANTED
"Petitions for Certiorari are granted and the decision of the Fourth District Court of Appeal is quashed insofar as it is inconsistent with Rinaldi v. Aaron, 314 So.2d 762 (Fla.) 1975, and the cause is remanded for further proceedings consistent herewith."
Synthesizing our original opinion and decision, we did three basic things:
1. Affirmed the judgments as to liability,
2. Reversed and remanded for a new trial on the issue of compensatory damages,
3. Reversed and remanded for a new trial on the issue of punitive damages.
Analyzing the Supreme Court Mandate as it applies to our opinion and decision, we see that Nos. 1 and 2, above, stand undisturbed.
How about No. 3, above; what are we mandated to do by the quashing of our opinion "insofar as it is inconsistent with Rinaldi v. Aaron" and the remand to us "for further proceedings consistent herewith"?
We again look back to our opinion in light of Rinaldi v. Aaron, supra. We held that there must be adequate proofs of the defendant's net worth or financial ability to pay in order for an award of punitive damages to stand. Exactly opposite, Rinaldi v. Aaron, supra, holds:
"... that evidence of financial worth is admissible and may be considered by the jury in its determination of the amount to be awarded as punitive damages, but evidence of worth is not a requisite to such award." (Emphasis supplied.) 314 So.2d at 765.
We stand corrected and acknowledge as ordered that the portion of our opinion requiring evidence of net worth or financial ability to pay as a basis for an award of punitive damages has been quashed in favor of the opposite view expressed in Rinaldi v. Aaron, supra.
A review of our opinion reveals, though, that we assigned two additional reasons as a basis for reversing the award of punitive damages and remanding that issue for a new trial, reasons that were not encompassed or contradicted by Rinaldi v. Aaron, supra, or otherwise compromised by Supreme Court action.
First, we held:
"It is our firm judgment that the awards singly and in combination are so manifestly excessive as to shock our judicial *410 conscience. Under the circumstances the verdicts could only be indicative of the improper influences of passion and prejudice working on the jury. These influences probably emanated from usual well known union partisanships, excited by injuries to an innocent victim, coupled with the publicity[4] and heated climate[5] under which the case was tried. See Generally 9A Fla.Jur. Damages §§ 98 and 99 (1972).
"[4] An appendix to the brief of the local union contains fourteen newspaper articles of moderate length which were published at various times during the trial. The articles discuss events leading to the trial and the trial progress. Some of the article headlines were: `Union Harassment Claimed in Trial,' and `More Testimony Given On Union Violence.'
"[5] The trial itself brought heated exchanges. The trial court judge admonished one attorney for calling a witness a liar, was provoked to the point of threatening to jail a union attorney and the jury heard evidence during the trial of union harassment of a union member who testified for Lassiter." 295 So.2d at 639.
Secondly, we held that, while an award of punitive damages was proper in the case, we were concerned with the amount of such award. We said:
"[I]t is our understanding that there should be some reasonable, albeit imprecise, relationship between punitive and compensatory damages. Air Line Employees Ass'n Int. v. Turner, 291 So.2d 670 (3d D.C.A. Fla. 1974); Crowell-Collier Pub. Co. v. Caldwell, 170 F.2d 941 (5th Cir.1948); Hutchinson v. Lott, 110 So.2d 442 (1st D.C.A. Fla. 1959). With this background we opine that there is an impermissible and gross imbalance here between the actual damages suffered and the punitive damages awarded." 295 So.2d at 640.
And now, since we necessarily return the case for a new trial on the matter of conpensatory damages, it would be an anomaly not to likewise return the issue of punitive damages. If we said, as we did, that the balance between the two awards was impermissible, what would be the result if we now sustained the punitive damages and the new jury returned a lesser sum for compensatory damages on retrial, as it would be authorized to do? The impermissible imbalance would be even larger with this court barred from appellate correction.
In sum, we are of the opinion that, after giving full credit to Rinaldi v. Aaron, supra, there remain fully sufficient legal reasons to still cause a new trial on the issue of punitive damages. Believing that the law and justice of the cause so indicate we, in accord with the mandate of the Supreme Court of Florida, reverse the awards of damages, compensatory and punitive, and remand for a new trial as to such issues.
It is so ordered.
OWEN and DOWNEY, JJ., concur.