344 So.2d 279 (1977)
August L. BOBENHAUSEN, Appellant,
v.
CASSAT AVENUE MOBILE HOMES, INC., et al., Appellees.
No. BB-468.
District Court of Appeal of Florida, First District.
April 1, 1977.
Rehearing Denied April 26, 1977.
*280 David C. Goodman, Jacksonville, for appellant.
James N. Watson, Jr. and Donald W. Matthews, Jacksonville, for appellees.
ERVIN, Judge.
This is an appeal by plaintiff Bobenhausen from an order of remittitur reducing a jury verdict of $80,000.00 to $40,000.00. Charles Boucher, the defendant-appellee, is the owner of Cassat Avenue Mobile Homes, Inc. and employed Bobenhausen as sales manager in October, 1973; approximately seven months later Bobenhausen's employment was terminated. Boucher claims he fired Bobenhausen. Bobenhausen states that he left voluntarily because Boucher was cheating him on his commissions. Sometime later Bobenhausen sought employment with one Gil Sousa, the owner of another mobile home retail sales company. Sousa tentatively agreed to pay Bobenhausen a salary of $1,500.00 per month, plus 3% of the gross income, which was at that time between $300,000.00 and $400,000.00 annually. However, when Sousa sought prior employer references, he was told by Boucher that Bobenhausen was a "thief and a crook" who "stole him blind." Based upon this information Sousa decided not to employ appellant. Bobenhausen testified that he never heard from several other unnamed prospective employers after being required by them to identify his previous employer. In July, 1974, Bobenhausen purchased Ryle and Company, a mobile home retail company and entered into a financing agreement with Finance America, Inc. He was initially extended $25,000.00 credit for floor plan financing and retail sales financing. He also obtained additional financing through Ryle's former bank, the Normandy Atlantic. Late in 1974, he attempted to extend his credit at both institutions. The Normandy bank refused such credit without obtaining a character reference and the Finance America Company terminated its business with Bobenhausen after receiving a credit report which stated:
"Prior to purchasing this business, Mr. Bobenhausen was employed with Cassat Avenue Mobile Homes as general manager, but this employer states he was discharged due to his stealing from the company."
Bobenhausen then brought an action for slander alleging that his name and reputation *281 had been injured by Boucher's statements, seeking both compensatory and punitive damages. The Bouchers counterclaimed alleging that Bobenhausen made misrepresentations on their contracts by listing items of extra equipment such as air conditioners which were not installed in mobile homes, to their damage.
At the conclusion of the trial the jury returned a verdict in favor of Bobenhausen for $30,000.00 compensatory damages and $50,000.00 punitive damages. The Bouchers filed a motion for new trial alleging, inter alia, that the verdict was excessive both as to compensatory and punitive damages since there was a lack of competent evidence submitted to the jury to support the verdict and that the verdict could only be arrived at through conjecture or passion. The court thereupon entered its order of remittitur in the amount of $40,000.00.
The Bouchers argue that there must be some reasonable relationship between proof of the amount of compensatory damages to the amount of punitive damages and where compensatory damages are not clearly and fully shown so as to be ascertained with reasonable certainty, a judgment on a verdict in excess of the damages properly recoverable will be reversed for a new trial, citing Florida East Coast R. Co. v. Peters, 77 Fla. 411, 83 So. 559 (1919), and Hutchinson v. Lott, 110 So.2d 442 (Fla. 1st DCA 1959). They rely upon Hutchinson for the rule that punitive damages may not be awarded unless actual damages are shown.
In determining the types of compensatory damages recoverable in a defamation suit, Florida law recognizes two classes: general and special. General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander. They are allowable whenever the immediate result is to impair the plaintiff's reputation, although no actual pecuniary loss is demonstrated. 20 Fla.Jur. Libel and Slander sections 6, 88. Words which are actionable in themselves, or per se, necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result. Moreover malice is presumed as a matter of law from the publication of such words. Ibid.
Special damages do not result by implication of law from a wrongful publication and, unlike general damages, must be specially pled. It is necessary for a plaintiff to show his special damages proximately resulted from the defamation. Ibid. at section 111.
Spoken words falsely imputing a criminal offense to another are actionable per se. E.g., Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906); Tip Top Grocery Co. v. Wellner, 135 Fla. 518, 186 So. 219 (1938). Clearly then the statement made by Boucher to another that Bobenhausen was a "thief and a crook" who "stole him blind" was slander per se, if false. The jury has concluded that question to the Bouchers' detriment and there is no issue before us that it was not false.
Aside from the issue of whether special damages were established with reasonable certainty, we are of the view that since the plaintiff established by the greater weight of the evidence the Bouchers' statements were (1) false and (2) actionable per se, he need not show any proof of monetary loss to be entitled to recover punitive damages.
In the case below, Bobenhausen, as did Mrs. Firestone in Firestone v. Time, Inc., 305 So.2d 172 (Fla. 1974), stated in his complaint that his reputation had been damaged as a result of the defamations. In Time, the Court held that words which falsely accuse a woman of adultery are libelous per se and that a plaintiff need not allege or prove general or special damages.[1] *282 As Justice Powell observed in his majority opinion in Gertz v. Welch, 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974):
"Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation for supposed damage to reputation without any proof such harm actually occurred."
Continuing at 418 U.S. at 350, 94 S.Ct. at 3012:
"Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering."
We reject the Bouchers' argument that it is necessary before a plaintiff recover punitive damages that the amount of pecuniary loss be determined to a reasonable certainty.[2] The general rule is that in libel actions, even though no special damages may have been proven, a plaintiff may still recover punitive damages upon a showing that the publication was made for malice or ill-will toward him. 20 Fla.Jur. Libel and Slander section 90. The Third District Court of Appeal has recently held that where a defamation is actionable per se, punitive damages may be awarded even though the amount of actual damages is not shown, for in such situations the requirement of a showing of actual damages is satisfied by the presumption of injury which arises merely from a showing of such defamation. Saunders Hardware Five and Ten, Inc. v. Low, 307 So.2d 893 (Fla. 3rd DCA 1974).[3]
In Hutchinson v. Lott, supra, a judgment for $115.00 compensatory damages and $5,000.00 punitive damages based upon an action for assault was reversed. This court stated that in all actions for tort the jury is authorized to inflict punitive damages where (1) actual or compensatory damages are shown, and (2) malice, moral turpitude, wantonness or outrageousness accompanies the wrong committed. The opinion continued that while punitive damages may not be recovered unless actual damages are shown, the relationship of punitive damages to actual damages cannot be reduced to a mathematical certainty and is dependent upon the facts of each case. We feel the language employed by this court in Hutchinson is much too broad and is inapplicable to libel and slander cases which may be actionable per se. We specifically recede from any language in Hutchinson which suggests that in a per se defamation action, actual damages must be shown as a condition precedent to the recovery of punitive damages.
Since we are of the opinion that punitive damages may be awarded independent of proof of compensatory damages, the only question remaining is whether the aggravated damages awarded in the verdict were excessive. The answer depends upon (1) whether Bobenhausen adequately established malice resulting from the publication and (2) whether he adequately established special damages to support the amount of punitive damages returned by the jury. The purpose of punitive damages is not to compensate but only to serve as a deterrent *283 to others inclined to commit a similar offense. They are characterized as an allowance for malice, moral turpitude, wantonness, or outrageousness in the commission of the tort. Moreover the amount of compensation for libel or slander may be affected by the circumstances in which the defamation was published, for example a repetition by the defendant of the slander may be considered as aggravating the damages. Thus if the language used is disproportionately abusive and runs into expressions libelous in nature, a verdict for aggravated damages may be justified. Jones and Brother v. Greeley, 25 Fla. 629, 6 So. 448 (1889).
Bobenhausen introduced testimony from several witnesses who stated that Boucher informed them that he had fired Bobenhausen because he was a thief, a liar and a cheat. The defendant himself admitted he had advised several persons involved in commercial financing that Bobenhausen had been discharged by him because Bobenhausen was a thief. A subsequent publication of libel with knowledge of its falsity is proof of malice and may be introduced to show malice. Morgan v. Dunn and Bradstreet, 421 F.2d 1241 (5th Cir.1970).
In addition to general damages, we are of the view that special damages were established by Bobenhausen to a reasonable certainty. In Speight v. Kirby, 204 So.2d 543 (Fla. 1st DCA 1967), this court affirmed a verdict in favor of plaintiff in the amount of $2,500.00 compensatory damages and $2,000.00 punitive damages. Appellee Kirby, a real estate broker, presented evidence that Speight, a rival broker, wrote several libelous letters to the Federal Housing Administration accusing him of fraud, violations of FHA regulations and unethical business deals. His complaint for damages alleged that his business income had been reduced and his reputation damaged. Speight argued that the trial court erred in allowing certain alleged speculative testimony as to future loss of profits to be admitted into evidence. This court responded:
"We find no substantial merit in the contention that speculative losses were allowed to be shown. In this case there was a definite showing of reduction of income from the source attacked by the appellant and we think it was properly before the jury as an element of damages to be considered." Id. at 544.
Bobenhausen establishes his claim for special damages upon two circumstances: (1) the loss of his job as general sales manager with Mr. Gil Sousa, and (2) the loss of three to four mobile home sales per month due to cancellation of credit by the Finance America Company. Mr. Sousa clearly stated that but for the information received from Boucher he would have employed Bobenhausen. The testimony was uncontradicted from both Bobenhausen and Sousa that they had entered into an agreement that Bobenhausen would be employed at the sum of $1,500.00 per month plus 3% of the gross sales of Sousa's business which at the time were from $300,000.00 to $400,000.00 annually.
As a result of his failure to obtain an extension of credit, Bobenhausen testified that each lost mobile home sale cost him an average of $1,200.00 and that he was still losing three to four sales per month. It is our opinion based upon the rationale of Speight v. Kirby, supra, that the evidence relating to loss of future profits was established with reasonable certainty.
The courts have uniformly held that the relationship of punitive damages to actual damages cannot be reduced to a mathematical certainty. Hutchinson v. Lott, supra; Lan-Chile Airlines, Inc. v. Rodriguez, 296 So.2d 498 (Fla. 3rd DCA 1974). Illustrative cases include Lan-Chile Airlines v. Rodriquez, supra, in which a verdict awarding $2,500.00 compensatory damages and $110,000.00 punitive damages was reduced to $2,500.00 compensatory damages plus $25,000.00 punitive damages, or in the alternative, that the case be remanded for a new trial on the issue of punitive damages. Thus a ratio of ten to one punitive damages was impliedly approved by the court. In Miami Herald Publishing Company v. Brautigam, *284 127 So.2d 718 (Fla. 3rd DCA 1961), an award of $25,000.00 compensatory damages was held sufficient to justify $75,000.00 punitive damages. In Airline Employees Ass'n. Internat'l. v. Turner, 291 So.2d 670 (Fla. 3rd DCA 1974), an award of $175,000.00 punitive damages based on $3,000.00 compensatory damages was reduced to $30,000.00 punitive damages, or a ten to one ratio.
There is no question but that a trial judge may in his discretion review a jury's verdict when he feels the verdict is excessive, contrary to the evidence heard at trial and shocks the conscience of the court. Wheeler v. Nelson, 229 So.2d 11 (Fla. 2nd DCA 1969). We are aware that an order of the trial judge granting a remittitur is discretionary and may not be set aside on appeal unless an abuse of discretion is shown. E.g., Brewer v. Sun Ray Drug Co. of Florida, 105 So.2d 369 (Fla. 2nd DCA 1958); Price v. Jordan, 115 So.2d 444 (Fla. 2nd DCA 1959). Nevertheless we feel the rule stated by the Florida Supreme Court in Smith v. Jackson County, 134 Fla. 354, 183 So. 738 (1938), concerning the power of trial courts to order remittiturs is determinative here:
"The rule, however, is now well established that the power of the court to permit or require the entry of a remittitur should only be exercised in cases where the amount of excess is apparent or is readily ascertainable. Dodds v. Roane, 36 Ark. 511; Lary v. Lewis, 76 Ga. 46; Tucker v. Hyatt, 151 Ind. 332, 51 N.E. 469, 44 L.R.A. 129; Whitehead v. Kennedy, 69 N.Y. 462.
* * * * * *
In the instant case it appears that the evidence was conflicting; that there was substantial evidence to support a verdict for a great deal larger amount than that which was awarded by the jury and it appears that the trial court attempted to substitute its own judgment for that of the jury, without it appearing that the jury was influenced by prejudiced, biased, or other improper influences.
The record shows that the parties had a fair and impartial trial and that the jury was amply warranted by the evidence in returning the verdict which it did return in this case.
(4) It is with great reluctance that the writer declines to approve the action of a conscientious and able trial judge but there is a province in which judges have the supreme responsibility and likewise, there is a province occupied by juries which judges are not authorized to invade. To warrant a trial judge in setting aside a verdict and granting a new trial, there must be a reason in law for that action. Otherwise, the judge in taking such action invades the province of the jury and departs from the salutary well established principles of American Jurisprudence." 183 So. at 739.
The order of remittitur is reversed with directions that the trial court enter judgment for the amounts returned in the jury's verdict.
BOYER, C.J., and MILLS, J., concur.
NOTES
[1] This opinion was later vacated and remanded by the United States Supreme Court on the ground that there was no showing of fault on the part of Time in publishing the article. The court, reiterated the rule stated in Gertz v. Welch, Inc., infra, that in actions for defamation against publishers and broadcasters, the competing First Amendment right of freedom of the press is superior to that of a litigant's right to damages for libel when he has failed to establish fault of the publisher. Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1975).
[2] It should be noted that in Firestone v. Time, Inc., the Florida Supreme Court sustained a verdict of $100,000.00 general damages against Time where the only proof of injury to plaintiff was based upon mental pain and anguish. All claims as to injury to reputation were withdrawn prior to trial. Time, Inc. v. Firestone, 424 U.S. at 475, 96 S.Ct. 958 (Brennan, J., dissenting.)
[3] This court has approved the rule stated in Low since it reversed a judgment in favor of defendant Bank based upon an action for slander of credit and specifically quoted the rule above stated, holding that it was error for the trial court to instruct the jury that it could not award punitive damages unless an award of compensatory damages was made. Matthews v. Deland State Bank, 334 So.2d 164 (Fla. 1st DCA 1976).